(No. 35461

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STEPHEN STEELE, Plaintiff in Error.

*Opinion filed May 19, 1961—Rehearing denied November 29, 1961.*

EDWARD J. EGAN, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Stephen Steele, pleaded not guilty to an indictment which charged that he "did offer to unlawfully sell a narcotic drug and then did unlawfully * * * sell to John Stribling, Junior * * * a quantity * * * of a certain purported narcotic drug * * *." (See Ill. Rev. Stat. 1959, chap. 38, par. 192.28—38.) He waived a jury trial, was found guilty after a trial before a judge, and was sentenced to the penitentiary for a term of not less than two nor more than six years. Upon this writ of error he contends that the allegations of the indictment were not proved beyond a reasonable doubt, and that prejudicial testimony was admitted over his objection.

An informer, Robert Jackson, a Federal narcotics agent, Joseph Dino, Jr., and a State narcotics agent, John Stribling, Jr., testified for the People. Jackson testified that about two weeks before December 11, 1958, the defendant had told him that he could buy narcotics from the defendant and had given him his phone number. Several narcotics agents were present about 6:30 P.M. on December 11, when Jackson telephoned the defendant. The defendant was not in, but he returned the call later. Jackson told him that he wanted to buy an ounce of raw heroin. The defendant said it would cost $400, and they arranged to meet. Agent Dino listened to the conversation on an extension telephone, and corroborated Jackson's testimony with respect to it.

Stribling accompanied Jackson to the meeting place. There the defendant questioned Stribling's presence, saying to Jackson, "Aw, what's this here?" Jackson replied "He's all right. He's with me." Jackson testified that he then "stepped out of the picture and Officer Stribling and him transacted the business." Stribling gave the defendant a roll of bills, the serial numbers of which had been recorded, and the defendant gave him a small package wrapped in paper. Stribling then returned to Jackson's

apartment and performed a field test which showed that the substance in the package was not narcotics. Chemical analysis later disclosed it to be quinine hydrochloride.

Agent Dino testified that he observed the meeting while sitting in a parked automobile and that he placed the defendant under arrest after the transaction was completed. Stribling testified that after the defendant was arrested, he denied dealing in narcotics but said that he needed the money and "When you find a sucker, bump his head." Dino's testimony corroborated this conversation.

The defendant denied that he had offered to sell narcotics. He testified that he had seen Jackson several weeks before the arrest, at which time Jackson had complained of being sick and had asked him if he had any quinine. He went home and got Jackson the quinine. He testified that he wanted a job, and gave Jackson his phone number so that Jackson could call him if he learned of anyone who was looking for a doorman or houseman. He also testified that when he spoke to Jackson on the telephone Jackson asked if he had any more of "the stuff you gave me the other day," and also requested him to keep some money that Jackson had won gambling because "I don't want my old lady to know it." He testified that he gave the quinine to Jackson, but that "the other fellow" gave him the money.

The statute under which the defendant was prosecuted provides: "Whoever agrees, consents or in any manner offers to unlawfully sell * * * any narcotic drugs to any person, * * * and then sells * * * to any person any non-narcotic * * * substance or material shall be imprisoned * * *." (Ill. Rev. Stat. 1959, chap. 38; par. 192.28—38.) The defendant contends, and the People agree, that to establish guilt the proof must show beyond a reasonable doubt that the defendant offered to sell narcotics to Stribling, and sold a non-narcotic substance to him. The defendant urges, however, that the evidence shows that if

any offer to sell was made, it was made to Jackson, and not to Stribling.

The interpretation that the parties have placed upon the statute and the indictment would seem to exclude the case in which A offers to sell a narcotic drug to B, who communicates the offer to C, to whom A then sells a non-narcotic substance. We express no opinion as to the correctness of this interpretation, for the court was justified in finding from the evidence in this case that the defendant offered to sell a narcotic drug to Stribling. Stribling testified that he said to the defendant, "$400 is a lot of money for an ounce of heroin. I have to be sure that it's good stuff. He says 'It's good. It's good. Let's deal.' " This testimony was sufficient to establish an offer to sell narcotics to Stribling, and the sale to him was established by his testimony that "He handed me the package with one hand and I handed him the roll of bills with the other."

The defendant also contends that the court erred in admitting prejudicial evidence over his objection. Jackson was the first witness for the prosecution. On direct examination, after he had given his name and address and had stated that he used narcotics, he was asked, "What kind of business dealings did you have with the defendant prior to December 11, 1958." Over objection he was permitted to answer, "Buying narcotics." The defendant's motion for a mistrial was denied.

The People suggest that this evidence of other offenses may be justified by our decision in *People* v. *Aldridge,* 19 Ill.2d 176, 180. The circumstances here, however, differ from those in the *Aldridge case.* There the reference to prior offenses was not elicited at the outset of the prosecution's case, but came in the course of the defendants' assertion of their innocence upon direct examination by their own attorney. It was in that context that we pointed out that the "testimony tended to negative the possibility of innocent

or inadvertent conduct on the part of the defendants, and to establish their guilty knowledge, and so would apparently have been admissible even if offered by the prosecution."

The unique nature of the crime with which the defendant was here charged must be taken into account in determining the admissibility of the evidence. This case does not involve a prosecution for the sale of narcotics, but rather a prosecution for offering to sell narcotics and then selling a different substance. The element of deceit is thus a principal ingredient in the offense, and the overtones are those of confidence game, or of obtaining money under false pretenses. Evidence of earlier transactions in narcotics supports an inference that those earlier sales were part of a course of conduct designed to induce the belief that what was now offered for sale was also a narcotic drug. That evidence also makes it more likely that on the present occasion the defendant offered to sell narcotics rather than some other substance, and it tends to show that the defendant knew that what he was selling was not a narcotic drug. (See Wigmore on Evidence, 3rd ed. secs. 321, 304.) The evidence of other transactions was thus independently relevant apart from its tendency to show the bad character of the accused, and so its admission was not improper. *People* v. *Lehman,* 5 Ill.2d 337, 342-3; McCormick on Evidence, sec. 157.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*