People of the State of Illinois, Plaintiff-Appellee, v. Edward Brown (Impleaded), Defendant-Appellant.

Gen. No. 50,947.

First District, Fourth Division.

May 12, 1967.

Rehearing denied June 8, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn, Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Ronald Sandler, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Unlawful sale of narcotics.*

DEFENSE AT TRIAL: Defendant denied that he committed the alleged offense.

JUDGMENT: After a jury trial the defendant was found guilty and was sentenced to the penitentiary for a term not less than 15 nor more than 20 years.

POINTS RAISED ON APPEAL:

1) The trial court erred in admitting evidence of defendant's silence upon arrest when being questioned by police;

2) The trial court committed error in admitting into evidence prejudicial out-of-court statements of a codefendant (subsequently severed) made to a police officer out of the presence and hearing of defendant and without his consent;

3) The trial court improperly admitted evidence of the sale of narcotics separate and distinct from the crime charged in the indictment;

4) The Assistant State's Attorney prejudiced the defendant by his argument.

EVIDENCE: The evidence in the record is to the effect that on October 4, 1964, at about 7:30 p. m., Officer Richard McKelvey of the Chicago Police Department, received a telephone call from Richard Frisch, a police informer, who also used the name of Robard Davis. Officer McKelvey, with two other police officers, drove in an unmarked squad car to the vicinity of Wells and Division Streets, in Chicago, where Frisch got into the car; they then drove to Elm Street and parked across

---

* Ill Rev Stats 1963, c 38, §§ 22–1 to 22–54. Uniform Narcotics Drug Act.

459

from the building at 215 West Elm. Frisch was searched and no narcotics or money were found on him. He was given prerecorded money for which he signed in the name of Robard Davis; he then went to the basement apartment at 215 West Elm, where he stayed about 15 minutes, then returned to the car. Frisch and the officers later testified that at that time he gave the officers two packets containing a white powder; that Officer Kurowski field tested it and determined that the powder was "positive."

The officers then went to the apartment at 215 West Elm and placed under arrest three persons found there— Bernadine Partee, Frank Wilson, and Edward Brown, the defendant. The apartment was searched and one packet of narcotics was found on the person of Bernadine Partee, who acknowledged ownership of the packet. The three persons arrested were then taken to the police station where Bernadine Partee and Edward Brown were charged with the unlawful sale of narcotics, and a disorderly conduct charge was placed against Wilson. At police headquarters the prerecorded money was found on the person of Partee. The two packets which Frisch had given the officers were subsequently tested by police chemists who testified that they contained heroin.

On the day of the trial Bernadine Partee was granted severance. She testified for the State as follows: On October 4, 1964, she heard a knock on the window of her apartment, looked out and saw Frisch. Edward Brown was in her apartment and she told him that Frisch was outside; he told her to let him in. Frisch said he wanted to get two "bags" of narcotics, and she got them from Brown, took the money ($20) from Frisch and gave him the bags which Brown had taken from a little medicine bottle. When they arrived at the police station later, she had put the money in her shoe.

Over the objection of the defendant, Officer Kurowski was allowed to testify to a conversation between him-

460

self and Partee at the police station, outside the presence of Brown, at which time Partee told the officer that the one foil package of narcotics she had was hers; that the other two packages were not hers, but were obtained from Brown and given to Frisch.

Officer McKelvey testified, over objection by the defense, that subsequent to the arrest and while they were in the Elm Street apartment, he questioned Brown, asking "how long have you been selling narcotics, why have you been selling narcotics, did you in fact sell narcotics to Richard Frisch and did you know that Bernadine Partee told us that you in fact handed her the narcotics?" To all of these questions the defendant remained mute; the only thing he said during the time of the questioning was, "Officer, you don't know what you are talking about."

Frank Wilson testified on behalf of the defendant to the effect that when Frisch came into the apartment he and the defendant commenced arguing about a previous transaction involving $25; that Bernadine Partee then took Frisch into the hall, and came back into the room with a package in her hand, saying that Richard had given it to her and that it was narcotics. At that time the police entered. Wilson testified that he did not see Partee give any narcotics to Frisch, nor did he see Frisch pass any money to her; that whatever occurred took place in the hall.

Brown denied that he made any sale of narcotics to Frisch in Partee's apartment; he testified that Partee and Frisch had engaged in a conversation in the hall, outside Partee's apartment; that after the conversation Partee came back in the room with a packet of narcotics which she said Frisch had given to her.

■ OPINION: Brown argues that the testimony of police officer McKelvey was prejudicial when he stated that after the arrest and while he was with Brown in the Elm Street apartment he asked Brown about the sell-

461

ing of narcotics, and that Brown was silent during the questioning. In People v. Rothe, 358 Ill 52, 192 NE 777 (cited with approval in People v. Lewerenz, 24 Ill2d 295, 181 NE2d 99), the Supreme Court held that it was error to permit the prosecution to prove by an officer that the defendants refused to make a statement at the police station, and said at p 57: "The admission of this evidence was prejudicial, and since it was neither material nor relevant to the issue being tried it should have been excluded." This is particularly true where the accused has indicated he did not acquiesce in the statements made in his presence. People v. Nitti, 312 Ill 73, at 93, 143 NE 448. The rule was reaffirmed in People v. Wright, 65 Ill App2d 23, 212 NE2d 126. Under the circumstances in the case before us the evidence should not have been admitted.

■■ Brown also objects to the evidence adduced by the State with reference to Officer Kurowski's testimony regarding a conversation he had with Bernadine Partee which did not take place at the time of the arrest but later at police headquarters and out of the presence of the defendant. Kurowski had testified that Partee said two packages of heroin were not hers but were obtained from Brown and given to Frisch. The fact that the testimony is to a great extent the same as that of Partee on the stand does not prevent it from being prejudicial.

This evidence was improperly admitted and constituted reversible error. A case directly in point is People v. Smuk, 12 Ill2d 360, 146 NE2d 32, in which Smuk was indicted, together with one Heidman, for committing a criminal abortion. The court granted the defendant a severance. During the trial a policewoman testified to certain conversations she had had with Heidman out of the presence of Smuk. The court held that these statements "were clearly hearsay and highly prejudi-

cial." The court further stated: "We feel that the quantity and character of this highly prejudicial testimony warrants a new trial." The court cited and quoted from People v. Colegrove, 342 Ill 430, 174 NE 536, where it was said:

"Declarations out of court or statements of any kind by a third person against the accused, made in his absence and without his knowledge, are inadmissible as evidence against him. The rule is elementary and a violation of it is a violation of the constitutional right of the accused that he shall not only be informed of the nature of the charge against him but be permitted to meet the accusing witness face to face."

The court reversed and remanded the case for a new trial.

■ Brown argues that the court improperly admitted evidence of the sale of narcotics separate and distinct from the crime charged in the indictment. (Partee had testified that she had bought drugs from Brown before October 4, 1964.) In support of his contention Brown cites People v. Fuerback, 66 Ill App2d 452, 214 NE2d 330, and other cases. In People v. Lewerenz, 24 Ill2d 295, 181 NE2d 99, the court said, at p 298:

"In prosecutions for offenses involving narcotics, authorities are in accord that evidence of other offenses is inadmissible unless it comes within one of the recognized exceptions to the general rule, i. e., where it is a part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice or a common plan or scheme. (See: 22A CJS, Criminal Law, sec 691(25) and cases there cited.) Within the rule, we have held that in a prosecution for a sale of narcotics on a specified date, (the situation of the instant

case,) the sale of narcotics on a prior date may not be shown to convict the accused of the crime charged. (People v. Rivas, 5 Ill2d 556.)"

In answer to this contention the State in its brief quotes from a case without identifying it, to the effect that evidence of other offenses is admissible, if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime, and that evidence of the sale of narcotics by a defendant other than the one for which he is being tried, is admitted when such evidence is relevant to prove his identity, his guilty knowledge, or to show his design or system. The evidence in this case before us does not fall within the rule laid down either in the State's brief or in the Lewerenz case. The evidence was improperly admitted.

▉ To some of these matters objection was made and to others there was no objection; however, where the errors in the trial affect substantial rights they may be noticed although they were not brought to the attention of the trial court. People v. Wright, 65 Ill App 2d 23, 212 NE2d 126; People v. Weinstein, 35 Ill2d 467, 220 NE2d 432.

▉ Brown also objects to the argument of the State's Attorney and claims he was prejudiced thereby. In his argument the Assistant State's Attorney told the jury that if they believed the defendant had never sold narcotics before October 4, 1964, they should find him not guilty. This argument was certainly prejudicial.

▉▉ Counsel for defendant argues that the conviction should be reversed without remandment because the only evidence against the defendant is that of Partee and Frisch; that Partee had been arrested with the defendant and would have a later trial in the Criminal Court; that Frisch was an addict, and consequently his testimony should be carefully scrutinized. It is undoubtedly

the rule that where a witness is a narcotic addict and a police informer, it has an important bearing on his credibility, and the same rule applies where a person is an accomplice. People v. Perkins, 26 Ill2d 230, 186 NE2d 330. However, in this case there was corroboration in that Frisch, the informer, and Partee, the accomplice, both testified to the same facts, and their testimony was corroborated by the fact that the police officers had gone with Frisch to the apartment where the drugs were furnished.

██ While we are remanding for a new trial because of trial errors, without these errors the conviction would not be reversed, since the Appellate Court should not substitute its judgment on the credibility of witnesses and the weight to be given their testimony, unless we can say that the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. People v. Romero, 54 Ill App2d 184, 203 NE2d 635. Also see People v. Johnson, 75 Ill App2d 42, 221 NE2d 59.

The judgment of the Circuit Court is reversed and the case is remanded for a new trial.

Reversed and remanded.

ENGLISH, P. J. and DRUCKER, J., concur.