**People of the State of Illinois, Plaintiff-Appellee, v. Emil Bratu, Defendant-Appellant.**

**Gen. No. 54,125.**

First District, Third Division.

April 2, 1970.

George B. Collins and Jeffrey Schulman, of Chicago, for appellant.

William J. Scott, Attorney General of State of Illinois, of Springfield (James B. Zagel, Assistant Attorney General, Edward V. Hanrahan, State's Attorney of Cook County, of Chicago, Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Emil Bratu, was indicted with William Trigg for having sold a purported narcotic drug when, in fact, the substance sold was not narcotic. They were found guilty by a jury and sentenced to the penitentiary for not less than seven and not more than ten years. Trigg's conviction was affirmed in People v. Trigg, 97 Ill App2d 261, 240 NE2d 130 (1968).

In this appeal Bratu raises the following points: (1) no proof was adduced that he knew the substance was nonnarcotic; (2) evidence admitted as to his prior sales of narcotics deprived him of a fair trial, and (3) the penalty provisions of the Narcotics Control Act (Ill Rev Stats 1967, c 38, Art 22) are unconstitutional.

The facts are fully set out in People v. Trigg, supra, and will not be detailed here. Briefly, Bratu, after having made one or two sales of heroin to Stephen Hnatt, a State

narcotics inspector, agreed to sell him a large quantity—500 grams. During their negotiations Bratu spoke of his supplier. Trigg fitted Bratu's description and they were seen together prior to the sale. On the day of the sale Hnatt gave Bratu $5,750 in marked bills and drove him to the motel, where he was to meet his supplier. Soon after Hnatt parked his auto, Trigg came out of the motel and entered his own car. Bratu walked over to Trigg's car and got in. After a few minutes he emerged with a package and Trigg drove away. Bratu returned to Hnatt's auto and gave him the package. Bratu was arrested, as was Trigg who had been pursued by inspectors deployed at the scene. $2,050 of the marked money was found on Bratu, $3,700 on Trigg.

The contents of the package turned out to be non-narcotic and the two men were indicted under the statute which provides a penalty of one to ten years for anyone who, after agreeing to sell narcotic drugs, sells a non-narcotic substance. Ill Rev Stats 1967, c 38, par 22–40.

■ Bratu's first point concerns his knowledge of the substance sold Hnatt. He argues that although Trigg may have known it was not heroin, the evidence did not prove that he knew it was not. One count of the indictment charged the defendants with selling a nonnarcotic substance after offering to sell a narcotic drug. The second count charged that they sold a purported narcotic drug knowing that the substance was not narcotic. Under the first count, as well as under the second, it was the burden of the State to prove that they knew the substance was nonnarcotic. The mental state requisite to guilt under this count was knowledge that a nonnarcotic substance was being sold. Ill Rev Stats 1967, c 38, par 4–3, par 4–5.

■ The proof of Bratu's knowledge can be determined from the facts and circumstances in evidence.

During his dealings with Hnatt he referred to his "supplier." His use of the term implied an established relationship between him and the person from whom he obtained narcotics. This person was Trigg. It was a reasonable inference from the evidence that their association when dealing in narcotics was close and constant. They were together at different times before the sale to Hnatt; they were together at the time of the sale and they divided the money from the illegal sale. Soon after his arrest, Trigg said all that the inspectors received in the package was "a big fat turkey, just wait until they put the acid to it and you'll see." He explained that he suspected something was wrong and that he was "running" the substance through to see what would happen. Bratu and Trigg were partners in the sale and participated in the same course of conduct; it was reasonable for the jury to conclude that they shared the same knowledge and participated in a common design.

■ A reviewing court will not disturb a jury's verdict unless it is based on clearly unsatisfactory evidence which causes a reasonable doubt of the defendant's guilt. People v. Uselding, 107 Ill App2d 305, 247 NE2d 35 (1969). The evidence was sufficient to establish beyond a reasonable doubt that Bratu convinced Hnatt through prior narcotics sales that he would sell him 500 grams of heroin, and that he then knowingly deceived him by selling instead a substance which was not a narcotic drug.

■ Bratu next contends that the trial court committed error in admitting Hnatt's testimony regarding the prior narcotics transactions between them. The evidence showed that on one occasion Bratu sold narcotics to an informer who was accompanying Hnatt and to Hnatt himself, and that on another occasion he sold Hnatt a small quantity of heroin and a bottle of opium. The

95

offense with which Bratu was charged involved an element of deceit; evidence of his earlier narcotic sales supported an inference that those sales were part of a course of conduct designed to induce the belief in Hnatt that what he was later offered for sale was also a narcotic drug. The same point was considered in People v. Steele, 22 Ill2d 142, 174 NE2d 848 (1961), where the court said:

> "That evidence [of prior transactions in narcotics] also makes it more likely that on the present occasion the defendant offered to sell narcotics rather than some other substance, and it tends to show that the defendant knew that what he was selling was not a narcotic drug . . . . The evidence of other transactions was thus independently relevant apart from its tendency to show the bad character of the accused, and so its admission was not improper."

The evidence of Bratu's prior transactions with Hnatt was properly admitted to illustrate the defendant's deceitful course of conduct.

■ The defendant attacks the constitutionality of the penalty provisions of the Narcotics Control Act. Ill Rev Stats 1967, c 38, Art 22. He contends that the title of this Act, which reads:

> "An Act defining and relating to narcotic and other dangerous drugs, to make uniform the law with reference thereto and to repeal certain acts therein named,"

does not inform the reader that any criminal penalty is included within the statute. The question of the constitutionality of this statute was not raised in the trial court. The constitutional claim, therefore, cannot be considered on appeal. People v. Luckey, 42 Ill2d 115, 245 NE2d 769 (1969); People v. Orr, 10 Ill2d 95, 139 NE2d 212 (1956). This was the reason that the Supreme Court,

to which this appeal was first addressed, disclaimed jurisdiction.

The judgment is affirmed.

Affirmed.

SCHWARTZ and McNAMARA, JJ., concur.