**People of the State of Illinois, Appellee, v.
David Meid, Appellant.**

**Gen. No. 69–167.**

Second District.

September 3, 1970.

Harry J. Busch and Patrick Tuite, of Chicago, for appellant.

William Ketcham, State's Attorney of Kane County, of Elgin, and W. Ben Morgan, Assistant State's Attorney, for appellee.

JUSTICE THOMAS J. MORAN delivered the opinion of the court.

In a trial by jury, the defendant was convicted of selling marihuana in violation of section 3 of the Uniform Narcotic Drug Act (Ill Rev Stats 1967, c 38, § 22–3). Specifically, the indictment alleged that he and a codefendant, Timothy McMillan, sold marihuana to Inspector Joseph Grady of the Illinois Division of Narcotics Control on October 21, 1968, at or near the Meadowdale Shopping Plaza in Carpentersville, Kane County. The codefendant, McMillan, was found guilty in a separate trial, and is not involved here.

This is a nonprobationary offense and the minimum sentence for this crime is ten years. The defendant was sentenced to a minimum of ten years and a maximum of ten years and six months. He is 19 years of age and it appears that this is his first conviction.

One of the defendant's contentions on appeal is that the evidence was not sufficient to support his conviction. We believe that it was sufficient. Briefly, the evidence of

the People was that Inspector Joseph Grady of the Illinois Division of Narcotics Control met with a special employee of that Division, named Roger Stiller, on October 21, 1968. Grady and Stiller drove to an address in East Dundee, Kane County. This was a house where the defendant Meid lived with his parents. Stiller went into the house and came out with the defendant Meid and the codefendant Timothy McMillan. Thereafter, according to Inspector Grady, there was considerable conversation between him and Meid as to whether Meid would sell him marihuana. The gist of it was that, while Meid expressed willingness to sell to Stiller, he refused to sell directly to Grady. Grady insisted that he wanted to purchase directly from Meid, so that he could satisfy himself about the quality of the marihuana. Finally, Grady, Stiller, McMillan and Meid left Meid's house and, in two cars, drove to the Meadowdale Shopping Center in Carpentersville. Meid mentioned to Grady that he had left a pound of marihuana approximately 300 yards from his house and that he could go over there and transfer it to Stiller, so that Grady could obtain it from Stiller later that evening.

The parties then left the shopping center and, in McMillan's car, drove to a Tastee-Freeze stand. During this trip, according to Grady, Meid opened the glove compartment of the car and extracted a package of marihuana and some cigarette paper. He rolled a marihuana cigarette and passed it around for the four occupants of the car to smoke.

The group then drove back to the shopping plaza parking lot and further discussion ensued. Finally, McMillan stated that he would take Grady over to the marihuana. According to Grady, the defendant Meid agreed to this procedure. McMillan and Grady then drove, in McMillan's car, to a field near the Meid residence. McMillan got out of the car, picked up a package from the side of the road, returned to the car and handed the package to Grady. The contents of this package were later tested and determined to be approximately 3 ounces of marihuana. Grady produced $100 in currency and McMillan told him to put the money on the

dashboard of the car. McMillan then drove back to the shopping plaza where Meid and Stiller were sitting in Stiller's car. Meid approached McMillan's car, and stuck his head in the window. Grady told Meid that there was not enough marihuana, that its quality was not sufficient to warrant the price of $100, and that he was willing to pay only $80. According to Grady, Meid then stated that he wanted $90. Grady remonstrated further and Meid replied, "I'm in a hurry, $90.00 or nothing. Take it or leave it." Grady then took $10 back from McMillan and rejoined Stiller in the latter's car.

The defendant Meid testified in his own defense. His version of the evening's events coincided substantially with Grady's insofar as the comings and goings were concerned, and he even admitted that they did smoke the marihuana as described by Grady. However, he testified that he steadfastly refused to sell any marihuana to Grady, and that, in fact, he had expressed the suspicion that Grady was a narcotics agent. He conceded that McMillan ultimately agreed to sell to Grady, and that Grady and McMillan did depart for the apparent purpose of concluding a marihuana transaction, but he stated that he warned McMillan to have nothing to do with Grady and denied that he played any part in the transaction himself.

■ Considering the evidence in the light most favorable to the People, we believe the jury could properly have found that Meid did participate in the sale to Grady. There is the testimony of Grady that Meid referred to a "stash" of marihuana which he had secreted in a field near his home. Later, McMillan, in the presence of Meid, stated that he would take Grady to the place where the marihuana was. According to Grady, Meid expressed agreement with this. McMillan did in fact obtain the package from an area corresponding to the general description earlier given by Meid. Finally, there is the testimony of Grady that Meid participated in a discussion concerning the price of the marihuana and in fact demanded more money than Grady was willing to pay. All of this conduct on the part of Meid, is, we feel, sufficient to make him a principal in the sale.

■ The defendant argues that venue in Kane County was not proved, but we find that it was. Grady testified that he and Stiller went to the Meid home "in East Dundee, Kane County, Illinois," and referred to going to the "Meadowdale Shopping Plaza in Carpentersville, Illinois."

■ We can and do take judicial notice of the fact that Carpentersville, Illinois is located in Kane County. People v. Taylor, 121 Ill App2d 403, 257 NE2d 524 (1970).

■ ■ Despite the fact that we feel the evidence was sufficient to support a conviction, we must reverse the case for what we regard as prejudicial error in the admission of evidence. During the direct examination of Inspector Grady, the following occurred:

Q. "Was there any further conversation in the vehicle before you left the Tastee-Freeze?"

A. "The conversation while we were there was mainly between Mr. Meid and Mr. McMillan. I believe Mr. Stiller took part in it. It was more or less loose conversation about general occurrences in the area.

"At one point Mr. Meid stated to, well, to Mr. McMillan—well, Mr. McMillan, Mr. Stiller and myself, he had been more or less involved in a contest with another individual to see who could get the highest price for one marijuana cigarette."

MR. CHAPSKI: "If the Court please, I think this is only being used to prejudice my client, this type of testimony."

MR. KETCHAM: "Your honor, that is not true. We have a right to show these statements as statements against admission. I will be happy to present a case on this."

THE COURT: "Overruled."

A. "It involved a contest type arrangement to see who could get the highest price for one cigarette from teenagers, teeny-boppers. Meid said he got $7.50 for a cigarette from one person and

the person with whom he was competing managed to get $9.65 from one person. Mr. Meid complained he had lost this little endeavor or little contest."

Q. "It was a sale of what to a teeny-bopper?"

A. "A 'joint,' as they are called, which is a marijuana cigarette."

Q. "The jargon for a marijuana cigarette, in narcotics, is 'joint?'"

A. "Yes."

This testimony amounted to proof of an offense by the defendant, other than the one for which he was on trial. While proof of other offenses is relevant under certain conditions, e. g., evidence which establishes motive, intent, identity, accident or absence of mistake (The People v. Dewey, 42 Ill2d 148, 157, 246 NE2d 232 (1969); The People v. Cole, 29 Ill2d 501, 503–505, 194 NE2d 269 (1963); The People v. Steele, 22 Ill2d 142, 145–146, 174 NE2d 848 (1961)), none of those conditions are here met. In the instant case, the only purpose of the testimony was to show a propensity on the part of the defendant to commit this kind of crime, and this is specifically the purpose for which evidence of other offenses is held *in*admissible. People v. Baxter, 74 Ill App2d 437, 445–449, 221 NE2d 16 (1966); People v. Brown, 83 Ill App2d 457, 463–464, 228 NE2d 505 (1967).

The State says in its brief that these remarks on the part of the defendant, ". . . would confirm the fact that he was capable of having an intent to sell the drug." We agree that this is precisely what the evidence does imply, and, since it has no other purpose, that is its vice. As the Court stated in The People v. Lehman, 5 Ill2d 337, 342, 125 NE2d 506 (1955):

". . . Evidence of other crimes is objectionable 'not because it has no appreciable probative value, but because it has too much.' (I Wigmore, Evidence, 3rd ed, sec 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime.

And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded."

 Further, the sale of a narcotic drug is not a specific intent crime, section 3 of the Uniform Narcotic Drug Act (Ill Rev Stats 1967, c 38, § 22–3) and, therefore, intent was not an element which the State was required to prove.

At a later point in Grady's testimony, the following statement was made:

Q. "Was there any conversation in the car regarding narcotics while you were just driving around in the parking lot?"

A. "We ceased our discussion of all our deal on this evening at this time, and when we got to the northwest . . . pardon me . . . the northeast corner of the building at the Meadowdale Shopping Plaza, before we turned west, Mr. Meid stated he used to deal in . . . I believe he used the term, 'hard stuff,' but he no longer did it because he could make as much money on grass and did not take the risks in being arrested, as he did with hard narcotics."

Q. "What is 'hard' narcotics? What is that jargon for?"

A. "It refers to any of the opiates, such as heroin, morphine, demerol."

Like the testimony about the sale of marihuana to "teeny-boppers," this testimony about defendant's admission of having dealt in "hard" narcotics has no probative value except to show his propensity to commit this kind of offense. No objection was made to this particular testimony, but we regard its admission as sufficiently grievous to constitute plain error. People v. Brown, supra, 464.

Because of this prejudicial error in the admission of evidence of other offenses by the defendant, the case must be reversed and remanded for a new trial.

Defendant challenges the constitutionality of the ten year minimum sentence provided by the statute, contending that it violates the requirement that sentences

be proportionate to the offense. We do not reach this issue, but we do note that the defendant's argument was rejected by our Supreme Court eight years ago. The People v. Gonzales, 25 Ill2d 235, 184 NE2d 833 (1962).

For the reasons indicated, the cause is reversed and remanded for a new trial.

Reversed and remanded.

DAVIS, P. J. and ABRAHAMSON, J., concur.

## SUPPLEMENTAL OPINION ON REHEARING

After rendering the opinion herein, the State filed a petition for rehearing which we allowed. An answering brief, reply thereto and further oral arguments were had.

On rehearing the State urges that the testimony of Grady was admissible for two reasons, 1) it tended to prove a criminal intent which is a material element in every crime notwithstanding the fact that the sale of narcotics is not a "specific intent" crime and 2) it was part of the res gestae.

In a criminal case, evidence which discloses that the defendant committed a crime other than that for which he is being tried is admissible where it tends to prove a *fact in issue* or where it is used to establish motive, intent, identity, accident or absence of mistake or for any relevant purpose other than to show a propensity to commit a crime. The People v. Dewey, supra, 157.

The State argues that criminal intent is an essential element in all crimes, relying upon Section 4–3 and 4–4 of the Criminal Code (Ill Rev Stats 1967, ch 38, §§ 4–3 and 4–4) which are respectively entitled "Mental State" and "Intent." The State then equates mental state with intent and concludes that Grady's testimony was admissible to prove intent.

Committee Comments on these sections, at page 167, state:

"The use of the word 'intent' in the 1961 Code is limited to conscious objective or purpose to accomplish a described result, as distinguished from the 'general intent' which often has been used to describe also a presumption of culpability which follows frcm injury or awareness that certain voluntary acts will, or probably will, have wrongful or unlawful results."

The intent referred to as an exception in the Dewey case is a specific intent, not a general intent. The People v. Smith, 18 Ill2d 547, 552 (1960).

To adopt the State's theory that intent, unqualified, is an essential element to be proved in every criminal offense would, in effect, result in every offense becoming a specific intent crime. To uphold such a theory would also abolish the need for the rule pertaining to other crimes being offered into evidence.

The defendant, prior to Grady's disclosure of a previous sale, objected to this type of testimony. The State claimed it had a right to introduce the previous sale on the basis of admissions against interest and the court then overruled the objection.

In this Court, the State has abandoned the admission against interest ground (we assume it did so because such rule would apply only to the crime in question) and argues that anything discussed during the transaction between Grady and the defendant would be admissible as part of the res gestae.

The defendant, quite logically, counters that under this argument, if the defendant had said that he used to be a paid killer for a syndicate, this too would be admissible under the res gestae rule.

The term res gestae is an amorphous concept that has been applied indiscriminately to a multitude of situations, some containing no element of hearsay at all, others involving true exceptions to the hearsay rule. The People v. Poland, 22 Ill2d 175, 180 (1961).

In the instant case, the testimony of Grady as to his conversation with the defendant was not hearsay and

therefore there was no need for applying the res gestae concept. That portion of the conversation which was relevant and of probative value to prove the facts in issue for the crime being tried was admissible. However, that portion of the conversation concerning another sale of narcotics had no relevancy upon any fact in issue nor did it come within any of the exceptions noted in the Dewey case.

For the foregoing reasons we abide by our opinion as originally adopted. The reference in this case to another sale of narcotics merely apprized the jury of the propensity of the defendant to commit the crime being tried.