THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS P. BRYANT, Defendant-Appellant.

(No. 70-107;

Second District—September 29, 1971.

Adamowski, Newey & Riley, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant herein was indicted with one Larry Steen for the unlawful sale of a narcotic drug. He was represented by counsel of his own choice and by agreement of counsel was tried separately from Steen. The jury found the defendant guilty of the sale of marijuana, and he was sentenced by the court to serve ten to twelve years in the Illinois State Penitentiary.

On the evening of August 11, 1969, Detective Michael Ray, an undercover agent of the Du Page County Sheriff's staff, dressed as a hippie, went to Sandy's Drive-In in Addison. Sgt. Doria of the Du Page County Sheriff's office gave the agent $40 in bills bearing previously recorded

serial numbers. When Detective Ray arrived at Sandy's Drive-in, he talked to Larry Steen about buying narcotics. They got into the back seat of a Ford. They were joined by Dennis Bryant, and a marijuana cigarette was allegedly lighted and passed around to the five people in the car. The agent then had a conversation with Larry Steen, in the presence of the defendant, about the possibility of Agent Ray buying a "lid" ($20) of marijuana. Steen told Ray that he could not do so. Steen then asked the defendant if he could get him a "nickel bag" ($5) of marijuana to tide him over. Detective Ray then gave the defendant Bryant $5 of the recorded money and Bryant drove off. The defendant returned about half an hour later and said he could not get it. He then left and returned in a 1956 Chevrolet driven by an unknown party. Larry Steen approached the Chevrolet on the passenger side, and Agent Ray saw defendant Bryant hand Larry Steen a white envelope through the window on the passenger side. Steen then went to Ray's vehicle and placed the envelope on the front seat of Ray's car. The agent took down the license number of the Ford automobile that the defendant had originally come in as LC 9851. The agent drove to Detective Doria's house and gave the envelope to him which was introduced in evidence as State's Exhibit No. 1 and its contents was identified as marijuana by Gloria Kratz, an analyst for the State of Illinois, Department of Law Enforcement, Bureau of Identification.

The defendant has urged four grounds for reversal. The principal contention of the defendant is that he was denied a fair trial by the introduction of testimony of a Mr. and Mrs. Thomas J. Quinlan. The defendant took the stand and testified in his own behalf. On cross-examination the State's Attorney asked the defendant if he knew the daughter of Mr. and Mrs. Quinlan. An objection was made and in chambers out of the presence of the jury the State's Attorney stated:

"I have evidence he has said to Mr. and Mrs. Quinlan he has smoked marihuana in 1963 and he has smoked it at other times and he doesn't see anything wrong with it.

This is material to the question which goes to his *propensity*, to deal in and be associated with this particular type of drug." Emphasis supplied.

The trial judge sustained the objection. However, the State's Attorney proceeded with the cross examination and the following colloquy took place:

"Q: You indicated in answer to your counsel's question that you never sold marihuana to Michael Ray or anyone else, is that correct, sir?

A: Yes, sir.

Q: Did you ever give marihuana to anybody else?
A: No, sir.
Q: Never?
A: No, sir.
Q: In your entire life?
A: No, sir.
Q: Did you ever admit to anybody you gave marihuana to them?
A: No, sir.
Q: Do you know a girl by the name of Geralyn—
Mr. KNOTT: I am going to object, Judge, on the same grounds.
Mr. LARAIA: I would like to be heard.
THE COURT: The objection is overruled. Proceed.
Mr. LARAIA: Thank you."

The defendant denied he had told the mother and father of Geralyn Quinlan that he had given marijuana to her. The State's Attorney in chambers said he had evidence the defendant had told Mr. and Mrs. Quinlan that he had given marijuana to their daughter. The court at this time said "He is not charged with giving or dispensing to Geralyn Quinlan." However, again the court allowed the State's Attorney to proceed in cross examination, and defendant was questioned as to his association with one Geralyn Quinlan (17), her parents' disapproval of his association with her, and a meeting with them in October, 1969. This line of questioning was permitted on the theory of laying a foundation for impeaching of defendant's denial that he had ever sold or given marijuana to anyone. The defendant denied specifically that he at any time gave or said he gave marijuana to Geralyn. Defendant's counsel moved for a mistrial on the ground that this line of questioning was prejudicial and for the purpose of inflaming the jury. This motion was denied. In addition to this, the defendant was asked if he knew where Geralyn was when she stayed out all night at one time.

The State then called Mr. Quinlan, and over the objection of the defendant that such questioning was highly prejudicial and inflammatory, the witness was allowed to state he had ten children, including eight daughters; that he had a conversation with the defendant on the night of November 10, 1969; that defendant told him he smoked marijuana, had smoked it in the presence of his 17 year old daughter, Geralyn, and had given it to her. Mrs. Quinlan also testified similarly concerning the conversation with the defendant on November 10 in which he said he smoked marijuana and had given it to her daughter.

This testimony was followed by testimony of the mother of the defendant that on a night it was hinted defendant had kept Geralyn out all night, he had not done so. Geralyn Quinlan testified that she did not

smoke marijuana, and that she had never seen defendant have it or use it, and that she wished to marry him but her parents opposed it.

In closing argument the State dwelt extensively on the Quinlan testimony, stating that the State's Attorneys office knew that he had admitted using marijuana as early as 1962 and saw nothing wrong with it; that he gave it to the Quinlan's daughter and smoked it with her. The prosecutor stated that when the Quinlans said that they didn't like what the defendant stood for, that "narcotic drug addiction is what they are talking about"; the State's Attorney then stated that the real victims of the situation before the jury were people like Geralyn Quinlan and older people like her mother and father. He reminded the jury that Mr. Quinlan didn't want Geralyn to marry the defendant for an obvious reason, and that she would sneak out of the house early in the morning and stay out until 6:00 A.M. to visit him. After extensive reference to the Quinlan testimony, the prosecutor then told the jury that this was just a side issue.

This court is unable to believe that the Quinlan testimony, coming as it did just before the case went to the jury, and the great emphasis placed on it by the State in its argument, did not have a profound affect on the jury. We do not of course believe that the jury was so far affected as to think that it was just trying the defendant for contributing to the delinquency of a minor by allegedly meeting her in the early morning hours and smoking marijuana in her presence. But we must agree with the prosecutor, as he said, that the purpose of the testimony was to show the "propensity" of the defendant "to deal in and be associated with this particular type of drug." This was alleged evidence of criminal conduct undoubtedly prejudicial in effect, with little probative value.

The appellee has cited *People v. Hudson* (1971), 286 N.E.2d 481, in support of its contention that the decision should be sustained. In that case, the court stated that the testimony as to what was said was "all part of continuous narrative" and that was certainly not the factual case here with respect to the Quinlan testimony. The court there further found that the closing argument did not prejudice the defendant, and that evidence was not introduced for the sole purpose of showing defendant's propensity toward committing crimes like the one for which he was indicted.

It has been said that the law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded. (*People v. Lehman* (1955), 5 Ill.2d 337, 125 N.E.2d 506.) That does not mean that if it is independently relevant, it might not be admitted.

In *People v. Meid* (1970), 264 N.E.2d 209, this court said: "This testimony amounted to proof of an offense by the defendant, other than the one for which he was on trial. While proof of other offenses is relevant under certain conditions, e.g., evidence which establishes motive, intent, identity, accident or absence of mistake (citation), none of those conditions are here met. In the instant case, the only purpose of the testimony was to show a propensity on the part of the defendant to commit this kind of crime, and this is specifically the purpose for which evidence of other offenses is held inadmissible [citations]."

The testimony of the Quinlans amounted to an attempt to prove an alleged offense by the admission of the defendant, other than the one for which he was on trial. While proof of other offenses is relevant under certain conditions, i.e., evidence which establishes motive, identity, intent, accident, or absence of mistake, the conditions were not here met. *People v. Dewey* (1969), 42 Ill.2d 148, 246 N.E.2d 232; *People v. Cole* (1963), 29 Ill.2d 501, 194 N.E.2d 269; *People v. Steele* (1961), 22 Ill.2d 142, 174 N.E.2d 848.

■ The only purpose of the testimony of the Quinlans as stated by the prosecutor was to show the propensity on the part of the defendant to commit this kind of a crime, and that is specifically the purpose for which the evidence of other offenses is held inadmissible. *People v. Baxter* (1966), 74 Ill.App.2d 437, 221 N.E.2d 16; *People v. Meid, supra; People v. Brown* (1967), 83 Ill.App.2d 457, 228 N.E.2d 505.

■ In view of our ruling above it is not necessary that we consider the other issues raised by defendant in this appeal. However, we wish to note that testimony of Agent Ray before the jury, that two days subsequent to the alleged offense, the defendant said "He was thinking about going up to Lake Geneva, Wisconsin, and bring back some SMAC. SMAC is—well, hippie talk or young people's talk for heroin, sir." This testimony was of no probative value except to show propensity to commit this kind of an offense. Its admission was obvious error. *People v. Brown, supra.*

Reversed and remanded.

MORAN, P. J. and ABRAHAMSON, J., concur.