THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES D. CASTRO, Defendant-Appellant.

(No. 56524;

First District (2nd Division)—March 20, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and James E. Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

In Indictment No. 68-1305, defendant was charged with a sale of heroin on 1 April 1968 to a police undercover officer in violation of Ill. Rev. Stat. 1967, ch. 38, sec. 22—3. On 9 July 1969 defendant filed a discovery motion for an order requiring the State, among numerous other things, to "furnish a list of witnesses that the State may or may not call

who were occurrence witnesses at the scene of the alleged offense or who were present at the time of the arrest of the defendant". This request was simply denied by the trial court on 23 October 1969 without any discussion, while the court was in the process of ruling on all of the numerous items in defendant's discovery motion. On 10 February 1970, defendant filed a discovery motion for an order on the State "to produce Albert Spagnolli for the purpose of interrogation and as a witness". As grounds for the motion, defendant alleged that Spagnolli was an informer who was present at the time and place of the alleged sale and who was necessary for the preparation of the defense. Defendant further alleged that the whereabouts of Spagnolli were "only known by officers of the State of Illinois and the defendant is unable to learn of his whereabouts".

A hearing was held on this motion that same day. The purchasing officer was called as a witness. He testified that he had received a telephone call from defendant, who asked if the officer wanted to buy heroin. After defendant and the officer had established a meeting place, the officer contacted three other police officers and arranged a plan for the surveillance of the proposed sale. When the officer arrived at the meeting place, he testified that he saw defendant standing alone. Defendant got into the front passenger seat of the officer's car and the sale was thereupon made. The car remained parked during the incident and until defendant had left the car. Defendant was then called as a witness. He testified that he was with Albert Spagnolli at the time of the meeting with the officer. At Spagnolli's suggestion, he and Spagnolli got into the rear seat of the officer's car. The officer then drove the car about one block. During that time defendant was given some money by Spagnolli, but defendant sold nothing to the officer, nor did he see any sale of anything occur. After the short drive, defendant left the car with Spagnolli and the officer still in the car.

The court thereupon denied the motion because there was, in the court's judgment, no credible evidence that Spagnolli was present at the time and place of the alleged sale. The court also based its denial of the motion on the fact that, even if the testimony of defendant were credible, that testimony disclosed that Spagnolli was not a paricipant in any sale, since defendant's testimony was that there had been no sale at all of anything. For these reasons, the court held that there was no right to a disclosure of the whereabouts of Spagnolli.

The jury trial began shortly thereafter. The first witness called by the State was the same purchasing officer. On direct examination he was asked whom he saw when he arrived at the meeting place agreed upon with defendant. He replied that he saw defendant standing alone, and

also saw Albert Spagnolli, who was sitting in the rear seat of the officer's car. He testified that he got out of the car and talked to defendant alone. Thereafter, he and defendant got into the front seat of the car, where the sale occurred. He testified that Spagnolli at this time was sitting in the back seat of the car.

At this point, a conference was held out of the presence of the jury during which defense counsel contended that the purchasing officer had changed his testimony as to the presence of Spagnolli. But both the court and the prosecutor pointed out that, at the hearing on the motion to produce Spagnolli, the officer had never been asked about the presence of Spagnolli, and had testified merely that defendant was alone when he (the officer) met defendant. The prosecutor, however, conceded that he also had been caught by surprise, since, when he had opposed the discovery motion by maintaining that no one was present at the alleged sale other than the two participants, he had been operating on the basis of the testimony of the purchasing officer at the grand jury investigation. In that testimony the officer had not mentioned the presence of Spagnolli.

The trial then continued. One of the surveillance officers was called as a witness for the State. While he did not see the sale, his testimony also established that Spagnolli had been in the car at the time and place in question.

Defendant did not testify and the defense called no witnesses.

Following final argument the trial court gave the jury a number of instructions, including the following (IPI 17.01 CRIMINAL and 17.02):

> "To sustain the charge of violating the Narcotic Drug Act, the State must prove the folowing proposition: that the defendant sold heroin.
>
> If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The jury found defendant guilty, and the court, after a hearing in aggravation and mitigation, sentenced defendant to not less than 20 years nor more than 30 years in the Illinois State Penitentiary.

On this appeal, defendant first contends that the trial court erred in refusing to order the State to produce Albert Spagnolli so that Spagnolli might be interviewed and possibly called as a witness by the defense. He contends that production of this witness to the alleged crime was required under the decision of the United States Supreme Court in *Roviaro v. United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d

639. In *Roviaro*, defendant was charged in Count I of a two-count indictment with the offense of sale of narcotics, and in Count II with the offense of "transporting" narcotics. The informer involved was the buyer in the alleged sale, and could presumably be regarded as the ultimate destination in the alleged "transporting". The Government conceded that the informer's identity and whereabouts should have been disclosed as to Count I, but that his identity and whereabouts were irrelevant as to Count II and his conviction was therefore sustainable on that count. The court in a footnote confirmed the Government's concession as to Count I, but held that the informer's identity and whereabouts were relevant to the defense of Count II in a number of potential respects, so that, even as to Count II the identity and whereabouts should have been disclosed. We note in passing that the designation of the informer as a participant in the alleged offense is certainly true as to the sale in Count I but very doubtful as to the "transporting" in Count II. Active participation by a buyer is essential to the act of selling, but active participation by the person who constitutes the destination of goods being transported is not essential to the act of transporting.

We are aware that the *Roviaro* decision may not be binding upon this court in that it may be regarded as an exercise of the supervisory powers of the United States Supreme Court over Federal prosecutions rather than as a decision based on the Sixth Amendment to the Federal Constitution. But, even were it to be so regarded, still, since the court devoted considerable attention to the matter of "fundamental requirements of fairness", it is obvious that what would here be a Fourteenth Amendment issue of due process was not altogether irrelevant to that decision. In any event, since the decision in *Roviaro* in 1957, the Supreme Court of Illinois has referred to *Roviaro* in several opinions beginning with *People v. Mack* (1957), 12 Ill.2d 151, 145 N.E.2d 609. All of these cases have regarded *Roviaro* as expressive of the law of this State, whether or not expressive of a Federal constitutional requirement.

■■ The purpose for requiring the disclosure of the identity and whereabouts of the informer in *Roviaro* was to permit the defense to interview the informer and possibly to call him as a material witness. Obviously, this purpose is not satisfied where defendant knows the identity of the informer but does not know his whereabouts. Hence, the State must inform the defense of his whereabouts, if the State knows.

■■ The State attempts to justify the denial of the motion to produce on the ground that a motion to produce the informer is an improper method for the assertion of defendant's *Roviaro* right to know the whereabouts of Spagnolli, for the reason that the State is not always obligated physically to produce the informer. But in the instant motion to produce

Mr. Spagnolli, defendant alleged that the whereabouts of Spagnolli were "only known by officers of the State of Illinois and that defendant is unable to learn of his whereabouts". At the initial hearing on this motion, no disposition was made by the court, because the court left with the prosecutor the possibility of resolving the matter by giving the defense Spagnolli's address. When the motion next came before the court, the State had not given Spagnolli's address to defendant and continued to oppose the motion on the ground that there had been no occurrence witness other than the purchasing officer. Hence, all parties treated the motion as a motion to learn the whereabouts of Spagnolli rather than as a motion literally to produce him. We treat the motion in the same manner.

■■ As a further ground for affirming the trial court's denial of the motion, the State urges that the record does not demonstrate that the State knew the whereabouts of Spagnolli. While this is true, it is also true that there is nothing in the record to indicate that the State did not have such knowledge. The prosecutor simply persisted in asserting that the State was not obligated to disclose the whereabouts of Spagnolli, and did not allege that the State did not have that information (though he did allege that he personally did not have it). Furthermore, it appears that, on at least one occasion, Spagnolli had worked as a special operative for the State in detecting violations of the law, and that the case on which he had worked was about to come to trial. It would not, therefore, be unreasonable to infer that the State knew his whereabouts. In any event, to place upon defendant the burden of proving that the State actually does have knowledge of his whereabouts would be to make *Roviaro* meaningless.

■■ At the conclusion of the pre-trial hearing on the motion of 10 February 1970, the court denied the motion. Where the testimony in a hearing is in conflict, the court must make a decision as to the credibility of the witnesses. (*People v. Haskell* (1968), 41 Ill.2d 25, 241 N.E.2d 430.) At this pre-trial hearing, the testimony as to the presence of Spagnolli at the relevant time and place was in conflict, and we cannot say that the ruling of the court at that time was in error.

■■ Following, however, the testimony of the purchasing officer at the trial, there was no longer any question but that Spagnolli was present at the relevant time and place. The requirements of *Roviaro* thereupon became unavoidable, for a reason which defendant, it must be conceded, never made very clear to the trial court. That reason is that Spagnolli, present in the car at the time of the alleged offense, was a potentially crucial witness for the defense. Defendant had only two means by which

to introduce evidence in support of his contention that no sale, in fact, had occurred: he could waive his Fifth Amendment right and himself testify, or he could call Spagnolli as a witness. Should Spagnolli's testimony have supported defendant's version of the incident (and we have no basis in the record to conclude that it would not have supported defendant's version), defendant's interest in maintaining his Fifth Amendment right and his production of testimony which might have been more persuasive to a jury than his own obviously interested testimony cannot be viewed as a matter of mere trial strategy. Rather, it goes to the central right of the defendant under the Sixth Amendment to call witnesses in his own behalf. It was precisely this consideration which lead the United States Supreme Court in *Roviaro* to hold that the defense has a right of access to such witnesses.

> "Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe [the pseudonym for the informer] was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." 353 U.S. 53, at 64.

There is here, of course, no question of participation by Spagnolli, because the gist of the defense is that no sale whatever of anything took place. But the potential for Spagnolli to testify to that effect is at least as great as was the potential for John Doe to testify favorably for defendant in respect of the alleged offense of "transporting" in Count II of the indictment in *Roviaro*. In any event, it is surely "a matter for the accused rather than the Government to decide".

The State next contends that any right to disclosure of the whereabouts of Spagnolli was lost by failure of the defense to renew its motion following the testimony of the purchasing officer at the trial. We confess an initial sympathy with this contention. Had defense counsel specifically renewed his motion and, in particular, had he cogently explained to the trial court the vital importance of a "present" Spagnolli to the defense,

the disclosure sought might well have been ordered. On the other hand, defense counsel did call attention to the prior motion in his conference with the court following the officer's trial testimony. The relevant hearing on the motion had been before the same judge that same day. That the judge had a clear recollection of that hearing is evidenced by his prompt correction of the defense attorney's mistake concerning the testimony at that hearing. That the judge was not, however, put in a position to appreciate the real thrust of Spagnolli's importance to the defense is clear from his remark at the pre-trial hearing that all Spagnolli could testify to was that he (Spagnolli) took a ride in a car with defendant.

■■ Were the right involved here less crucial to the defense, we might hold that defense counsel's representations were inadequate to preserve the issue on appeal. Our courts have repeatedly refused to consider errors which were not effectively called to the attention of the trial court. On the other hand, our courts have also repeatedly held that errors which involve substantial rights should be considered on appeal, even though inadequately called to the attention of the trial court or not called to its attention at all. (*People v. Brown* (1967), 83 Ill.App.2d 457, 228 N.E.2d 505; *People v. McGrath* (1967), 80 Ill.App.2d 229, 224 N.E.2d 660.) In the light of the potentially crucial importance of Spagnolli's testimony to the defense, we hold that the trial court's failure to order the State to disclose his whereabouts after the purchasing officer's trial testimony was prejudicial error.

The second issue presented by defendant on this appeal is that the trial court committed reversible error by failing to give an instruction to the jury expressly stating that, in order to find defendant guilty of unlawful sale of heroin, the jury must find that defendant sold the heroin knowingly. In view of the possibility that this case may be retried, we must consider this issue. It is undisputed that knowledge of the nature of the substance sold is an essential element of the crime of sale of narcotics, just as it is for the crime of possession of narcotics. (*People v. Bussie* (1969), 41 Ill.2d 323, 243 N.E.2d 196.) The likelihood, however, of any prejudicial effect from failure expressly to include this requirement in the instruction given to the jury is far less where the offense is sale than it is where the offense is possession. And yet, even in prosecutions for *possession,* it has been held that failure to instruct the jury on the requirement of knowledge will not be prejudicial error, if the evidence of knowledge is so clear and convincing that the jury could not reasonably have found the defendant not guilty on that basis. *People v. Truelock* (1966), 35 Ill.2d 189, 220 N.E.2d 187.

■■ Normally, however, the mere possession of a thing does not necessarily infer knowledge on the part of the possessor as to the nature of

the thing possessed. For that reason, in the crime of possession of narcotics, it is usually critical to instruct the jury that they must find that, in addition to possession, there was knowing possession. A sale of narcotics, however, is always an intentional affirmative act, which, by its very nature, creates a reasonable inference that the seller knows the nature of the thing he is selling. Only in the exceptional case will the issue of whether there was a knowing sale arise.

In the present case, the trial court adopted its instructions from IPI 17.01 CRIMINAL and 17.02. In the words of the drafters, these instructions are intended to be "simple, concise, unslanted" and "non-partisan". In order to be such a model statement, the pattern instruction cannot cover every conceivable issue. In the Committee Note following instruction 17.01, the Committee acknowledges that there are many potential affirmative defenses which are not covered by the pattern instruction. The Committee thought, however, that "* * * no useful purpose would be served by framing instructions to meet all of the contingencies that would render manufacturing, possession, control, selling, prescribing, administering, dispensing, and compounding, lawful". The Committee intended, therefore, to draft an instruction which would conform to legal requirements in the average case, but which would require supplementation, should specific issues arise in a given case.

■■ We cannot say that the issue of knowledge in *sales* of narcotics is so likely to arise as to require that the essential element of such knowledge be expressly included in the instruction given in such prosecutions. Should this case be retried, and should there be some indication in the testimony that defendant did not know that the substance which he was selling was a narcotic substance, then the court should instruct the jury that they must find that defendant knowingly sold the narcotic substance in order to find him guilty. (*People v. Phillips* (1970), 129 Ill.App.2d 455, 263 N.E.2d 353.) Should there be no such indication in the testimony, the instruction as given would be unobjectionable.

For the reasons above stated, the judgment of the Circuit Court of Cook County is reversed, and the case is remanded for such further proceedings as may be had which are not inconsistent herewith.

Reversed and remanded.

LEIGHTON and SCHWARTZ, JJ., concur.