THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LINDA COLES, Defendant-Appellant.

(No. 58742; ▮▮▮▮▮▮

First District (2nd Division)—June 18, 1974.

852

James J. Doherty, Public Defender, of Chicago (John T. Moran, Jr., Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Jerald A. Kessler, and Patricia Unsinn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from an order that revoked defendant's probation. Three issues are presented for our review. 1. Whether the revocation violated defendant's constitutional rights because a material witness-informer, after demand by the defense, was not produced in court by the prosecution. 2. Whether the evidence proved that defendant violated the terms of her probation. 3. Whether the trial court applied the correct standards when it sentenced defendant after revocation of the probation.

In 1971, defendant was indicted for murder. On January 31, 1972, she pled guilty to the lesser included offense of voluntary manslaughter and was placed on 5 years' probation, the first 4 months as a work-releasee in the Chicago House of Correction. Although she was required to begin the probation term on February 10, 1972, she did not do so; therefore, a warrant was issued for her arrest and she was taken into custody. On March 16, 1972, she filed a petition asking the court to set a bond for her release. A hearing followed, with the result that the petition was denied but the terms of the probation were altered to provide that defendant was to serve the first 4 months of the 5 years as an inmate in the House of Correction rather than as a participant in the work-release program. With this change, the probation order went into effect. One of its injunctions was that the "defendant shall not, during the term of said probation, violate any criminal law of the State of Illinois, or any ordinance of any municipality of said State * * *."

However, on August 25, 1972, the probation department requested the trial court to issue a rule requiring defendant to show cause why her probation should not be terminated because it had learned that on March 8, 1972 (apparently while she was at liberty when she should have been serving her probation), defendant sold heroin to a woman informer whose activities were directed by two Chicago police officers. The rule issued; and after intermittant continuances until November 3, 1972, the

State presented its claim that defendant had violated the terms of her probation.

It called four witnesses: a probation officer, the two policemen and a police department chemist. From this evidence, the State showed that on March 8, 1972, sometime during the early evening, Chicago policemen Franklin Smith and Theodore Daniels talked with an informer in the eleventh district police station. Her name was Mary Ann Robinson; her address, later given at defendant's request, was 321 South Central Park, Chicago. Then, out of their presence, a policewoman, Lavinia Cox, strip-searched the informer. She was known to the officers as one who used narcotics. After the search, Robinson was given a marked, recorded $20 bill; and in the company of the two officers, went to the Hoover Hotel, 3200 West Jackson Boulevard, Chicago, arriving there at approximately 11 P.M. The hotel had a lobby entrance consisting of double glass doors. The lobby itself was well lit; and approximately 25 feet from the glass doors, was a desk. The woman informer entered the lobby, Smith remained in the vestibule and Daniels remained outside. Smith, from where he was, saw the informer use a telephone at the desk; and a short time later, defendant, who was known to Smith as Mary Hope, came down the stairs. For about 2 minutes, Smith looked on while the informer and defendant carried on a conversation. Then, Smith saw the informer hand a bill to defendant. The two women then walked to one side, out of Smith's line of vision. About 3 minutes later, the informer returned to the desk and was joined there by defendant. Smith saw defendant hand the informer a tinfoil wrapped package which the latter took and gave Smith a signal that the sale had been made. Thereupon, the informer left the lobby and gave Smith the package. Smith and Daniels entered the hotel, arrested defendant, searched her and recovered the pre-recorded, marked $20 bill. In addition, defendant had on her person keys to room 410 in the hotel. She asked the officers if they would go with her to the room to get a coat. They did; and when they entered with defendant, the officers observed several hypodermic needles and syringes on top of a dresser.[1] The package the informer gave Smith was later chemically analyzed and its contents found to be heroin.

Defendant testified in her own behalf. She admitted being in the Hoover Hotel the evening of March 8 at the time described by the two

---

[1] In addition, a pistol was found in the room. It appears, however, that part of this evidence was suppressed by the court that was hearing the narcotics charge against defendant. For this reason, the trial judge sustained objections to questions concerning what was found in the room. Therefore, we will decide this appeal as if references to the suppressed evidence were not in the record.

police officers. She admitted knowing the woman informer either as Mary Jane or Jane Robertson and having seen and talked with her in the Hoover Hotel on the evening in question. She admitted receiving the marked $20 bill from the informer. However, defendant told the court that 2 or 3 weeks before, she had loaned the woman $43. She claimed that the informer gave her the marked money in part payment of the loan.

The State did not call the woman informer. In answer to defendant's demand that she be produced, Officer Smith gave her address but told the court his department did not know her whereabouts because she had forfeited a bond and a warrant had been issued for her arrest.

After hearing the evidence and arguments of counsel in summation, the trial court found that defendant had violated the terms of her probation because, contrary to its sanctions, she committed the crime of selling heroin.[2] He remanded her to custody, ordered a pre-sentence investigation and scheduled a hearing in aggravation and mitigation. The hearing was held; and at its conclusion, the court repeated its finding that defendant had violated the trust placed in her when she was given probation. As to the punishment, it announced that "[t]he probation violation sentence is not less than seven nor more than twenty years in the Illinois State Penitentiary. She is remanded to the custody of the bailiff to serve her sentence."

■■ It is obvious that this was a case where disclosure of the informer's identity was essential to a fair determination of the cause and where, accordingly, the State's privilege not to disclose the informer's identity had to give way. (*Roviaro v. United States* (1957), 353 U.S. 53, 60-61, 1 L. Ed.2d 639, 77 S. Ct. 623.) The informer was a participant in the alleged crime; she was a material witness; therefore, the State had to disclose her identity. *People v. Williams*, 38 Ill.2d 150, 153, 230 N.E.2d 214; *People v. Castro*, 10 Ill.App.3d 1078, 295 N.E.2d 538; compare *Eleazer v. Superior Court* (1970), 83 Cal. Rptr. 586, 464 P. 2d 42.

■■ The record shows that this was done. Through the testimony of two policemen, the State disclosed who the informer was, gave her name, her last known address and the information it had concerning her whereabouts. Prior to the hearing when this disclosure was made, defendant did not request a list of witnesses or move for discovery of the evidence which the State was going to present in support of its claim that she had violated her probation. Defendant knew the informer. After the State gave its information concerning the informer's whereabouts, defendant

---

[2] After defendant was sentenced, the State moved for a *nolle prosequi* of this charge. The motion was sustained; therefore, defendant's guilt of this crime was never proven.

did not request an opportunity to investigate the veracity of what had been said by the policeman concerning the matter. Defendant was told of the informer's bond forfeiture, indicating that there were court records which could be checked. Consequently, this is not a case where the State refused to disclose the identity of its informer. (Compare *People v. Mc-Shann* (1958), 50 Cal. 2d 802, 330 P. 2d 33; see Annot., 76 A.L.R. 2d 262; 8 Wigmore, Evidence § 2374 (f) (McNaughton rev. 1961).) Nor is this a case where, unexplainably, the State failed to call an informer witness. (See *People v. Morrison*, 23 Ill.2d 201, 177 N.E.2d 833.) Therefore, defendant's constitutional rights were not violated when her probation was revoked without the prosecution having produced in court the material witness-informer.

■■ Before it decided on the revocation, the trial court heard the two policemen involved and the chemist who analyzed the package one officer received from the informer on the occasion he described to the trial judge. It contained heroin. The evidence showed that defendant was living in a hotel under an assumed name by which she was known to the police. She testified and confirmed her contact with the woman informer. She admitted receiving the marked money; she did not deny giving the informer the package. She claimed, however, that the money given her by the informer was payment on a debt. It was for the trial court to resolve the conflict between the State's evidence and defendant's testimony. (See *People v. Gabriel*, 132 Ill.App.2d 1089, 270 N.E.2d 869.) In our judgment, there was sufficient evidence from which the court could find that defendant, after being placed on probation for killing of a woman, and having been enjoined from violating any criminal law or a municipal ordinance, continued in a course of criminal behavior. (See *People v. Morales*, 2 Ill.App.3d 358, 276 N.E.2d 391.) This evidence, by the quantity required by law, proved that defendant violated her probation. *People v. Crowell*, 53 Ill.2d 447, 292 N.E.2d 721; *People v. Knighten*, 5 Ill.App.3d 640, 283 N.E.2d 738.

This being so, the trial court could "* * * alter the conditions of probation or imprison the probationer for a term not to exceed the maximum penalty for the offense of which the probationer was convicted." (Ill. Rev. Stat. 1971, ch. 38, par. 117—3(d).) The record, however, shows that in deciding the sentence, the trial judge said, "I have dealt with Miss Coles very leniently in the initial case, and I feel that she has violated the trust which on behalf of the community reposed in her [*sic*]. I feel that I have a very heavy responsibility to the community. Miss Coles has seen fit to violate that trust. She must now pay the penalty. The probation violation sentence is not less than 7 nor no more than 20 years in the Illinois State Penitentiary."

■■ In *People v. Livingston*, 117 Ill.App.2d 189, 192, 254 N.E.2d 64, we said that "[f]ew tasks are more difficult for a trial judge than the sentencing of a probationer. The decision to sentence always involves the finding that the probationer violated the trust placed in him when he was given the benefits of probation. The breach of trust, however, cannot overshadow the statutory mandate that the probationer be sentenced for the crime of which he was convicted, not for the acts of delinquency which may or may not justify revocation of probation." Of course, a court in imposing sentence must consider not only the crime, but by statutory command must take cognizance of all factors relevant to the rehabilitation potential of the defendant as an individual. (*People v. Hardy*, 8 Ill.App.3d 854, 291 N.E.2d 242.) Therefore, after revoking defendant's probation, and in appraising her rehabilitation potential, the trial court could consider what defendant did while she had the benefits of that alternative to imprisonment. *People v. Clyne*, 7 Ill.App.3d 121, 287 N.E.2d 72; *People v. Ford*, 4 Ill.App.3d 291, 280 N.E.2d 728.

■■ We think, however, the record should show that this is what was done. When defendant's probation was revoked, the law provided that "[a] person convicted of voluntary manslaughter shall be imprisoned in the penitentiary from one to 20 years." (Ill. Rev. Stat. 1971, ch. 38, par. 9—2(c).) The sentence imposed was 7 to 20 years, a severe one when considered against the fact that at her conviction, she was found fit for probation. The only justification for the sentence in this case is the finding that defendant violated the trust placed in her when she was given probation. Without consideration of her probation conduct as a factor in her rehabilitation potential, violation of her probation was not an appropriate reason for the sentence imposed. (See *People v. McCall*, 7 Ill.App.3d 135, 287 N.E.2d 45; *People v. Probert*, 3 Ill.App.3d 758, 279 N.E.2d 181.) Therefore, we are compelled to conclude that the trial court did not apply the proper standard when it sentenced defendant after revocation of her probation. The sentence will have to be modified.

The State concedes this much. It acknowledges that this case has not reached final adjudication and that the Unified Code of Corrections applies. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1; *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269; Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4.) Under that code, voluntary manslaughter is a Class 2 felony for which the minimum sentence cannot exceed one-third of the maximum. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1.) In this case, then, the minimum cannot exceed 6⅔ years; it is 7 years. The State suggests we exercise our power under Supreme Court Rule 615 and modify the sentence. See Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)).

■■ However, we think that it is best we affirm the order revoking defendant's probation and remand the cause with directions that the trial court resentence defendant, taking into account all of the factors in her case, including her conduct during probation as it reflects on her rehabilitation potential and the later *nolle prosequi* of the charge that she sold heroin to the woman informer.

Affirmed and remanded with directions.

HAYES, P. J., and STAMOS, J., concur.