THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DICK MONROE, Defendant-Appellant.

(No. 74-114;

Third District—September 30, 1975.

*Rehearing denied October 31, 1975.*

Louis E. Olivero, of Peru, for appellant.

Frank Yackley, State's Attorney, of Ottawa (F. Stewart Merdian, Edward Morris, and Martin Moltz, all of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury trial the defendant, Dick Monroe, was convicted of delivery of a controlled substance (Ill. Rev. Stat., ch. 56½, par. 1401(c)).

On this appeal the defendant argues as follows: (1) the trial court unduly restricted defendant's cross-examination of the State's principal witness; (2) the unavailability of an informer, whose presence at trial was necessary to resolve a conflict in the testimony, deprived the defendant of the opportunity to conclusively establish his innocence; (3) the trial court erred in refusing certain instructions tendered by the defendant; (4) the People failed to prove the defendant guilty beyond a reasonable doubt; (5) arguments made by the prosecuting attorney were prejudicial to the defendant's case and inflamed the jury, and (6) Supreme Court Rule 413(d) is unconstitutional as a violation of the privilege against self-incrimination.

In May, 1973, William R. Barrett, a special agent with the Illinois

Bureau of Investigation (IBI), and David Krug, a Federal agent, were involved in a drug investigation. Their purpose was to purchase various types of drugs from persons residing in the La Salle-Peru area. Also involved in the investigation was a paid informant, Junior Lucas.

On November 9, 1973, the defendant was arrested. An indictment charged that on May 21, 1973, the defendant knowingly delivered less than 30 grams of a substance containing lysergic acid diethylamide (LSD) to William R. Barrett.

The defendant first contends that the trial court improperly restricted his cross-examination of the State's principal witness, William R. Barrett, special agent with the IBI.

In direct examination, Agent Barrett stated that he stayed in various motels while serving in the La Salle-Peru area. On cross-examination, defense counsel asked the witness what motel he stayed in on May 21, 1973, during the time following the alleged delivery. The trial court sustained an objection to this question as a collateral matter. The record shows that the trial court excluded this question because it related to the witness' sexual activity which, the court knew, had arisen in previous trials.

Thereafter, defendant attempted, through the testimony of three witnesses, to show that Barrett had previously used drugs. The trial court, upon objection by the People, refused to permit this line of questioning.

Defendant contends that the questioning of Barrett was done solely to elicit possible leads for impeaching his testimony and the undue limitation of cross-examination deprived him of the right to confront his accusers. He also complains that the trial court's refusal to permit the three witnesses to testify unduly restricted his right "to impeach the credibility of Agent Barrett."

■■ Generally, a reviewing court will not interfere with a trial court's ruling concerning the latitude allowable on cross-examination of a witness unless that ruling was clearly abusive and resulted in a manifest prejudice to the defendant. *People v. Hanks*, 17 Ill.App.3d 633, 307 N.E.2d 638.

■■ We believe that the trial court did not abuse its discretion in limiting the cross-examination of Agent Barrett. The witness' previous sexual activity could not be used for the purpose of showing him to be unworthy of belief, but only to unnecessarily embarrass and disgrace him. Gard, Illinois Evidence Manual, Rule 475, at 602-03 (5th ed. 1963).

We also believe the trial court did not err when it refused to permit the three witnesses to testify that Barrett had previously used drugs. In light of Barrett's undercover status in the investigation, his credibility could not be affected by the offer of proof made by defendant.

The defendant next urges that the unavailability of an informer, whose

presence at trial was necessary to resolve a conflict in the testimony, deprived him of the opportunity to conclusively establish his innocence. In order to resolve this contention, it is necessary to set forth the evidence presented at trial.

Agent Barrett testified that on May 21, 1973, he observed one Greg Ghighi, who had previously sold him drugs, on a street corner. Barrett stated that he asked Ghighi if he had any LSD available for sale. Ghighi responded that he had 100 units which he would sell at $1 per unit. Barrett further testified that he asked Ghighi if he knew anyone who could sell a quantity of LSD at a better price. Ghighi responded affirmatively, stating that he would take Barrett to the supplier, a man named Dale Quimby.

Ghighi entered Barrett's vehicle and directed him to Ki John's tavern in La Salle, Illinois. Agent Krug and Junior Lucas, the informant, were also present in the vehicle at this time.

Barrett and the others drove to Ki John's tavern. Ghighi went into the tavern and, on returning to the vehicle, stated that Quimby was not present, but that the bartender was selling LSD for him. Barrett and Ghighi went into the tavern and sat at the bar. As the defendant, who was the bartender, approached them, Ghighi said that Barrett wanted to purchase LSD. Barrett testified that he asked the defendant if he would take less than $75 for 100 and the defendant responded that he would not because Quimby had instructed him to sell for that price. The agent then stated that he purchased 300 units of LSD from the defendant and paid him $225.

The defendant contends that the absence of the informer, Junior Lucas, who was a material witness for the defense, deprived him of due process of law.

The informer's identity is not at issue here since Agent Barrett testified that Junior Lucas was being used as an informer on May 21, 1973. Instead, the issue raised here concerns the People's failure to disclose the whereabouts of the informer in response to the defendant's pretrial motion to produce the names and addresses of all persons known to the People having knowledge of any matters or material relevant to the charge against the defendant.

Barrett testified that at the end of the investigation, Lucas was given $1,000 to leave the immediate area because of the danger and safety to his person and well being.

In *People v. Lewis*, 57 Ill.2d 232, 311 N.E.2d 685, the Illinois Supreme Court, in a consolidated appeal of three cases, was presented with the issue of whether the defense must be furnished with the name and address of an informer involved in a sale of narcotics. In each of the three

cases considered, only three persons were immediately present at the alleged sale, namely, the purchasing agent, the defendant and the informer. (Although other State agents were on surveillance and able to corroborate the presence of defendants at the scene, in no instance were they able to corroborate the essential elements of sale.)

Following *Roviaro v. United States*, 353 U.S. 53, 62, 1 L.Ed.2d 639, 646, 77 S.Ct. 623, the court held that disclosure of an informer's identity at trial was required where the informer was in the dual role of "informer-participant" in the sale of narcotics. In adopting the language of *Roviaro*, the court stated:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

In the case at bar, the informer, Junior Lucas, was neither a participant nor a witness to the essential elements of the delivery. Nothing in the record suggests that he assisted in staging the transaction. He neither heard what was said at the time of the transaction nor observed what each participant did in completing it. It appears that the only connection of the informant to the instant appeal was that he was engaged in a drug investigation on May 21, 1973, with Agents Barrett and Krug and that he accompanied them to the site of the alleged transaction. Since the informer was not present in the tavern at the time of the transaction, he cannot be deemed a crucial witness or source of information for the defense. (*People v. Lewis*, 57 Ill.2d 232, 311 N.E.2d 685; *People v. Aprile*, 15 Ill.App.3d 327, 304 N.E.2d 169.) *Cf.* the following cases in which the informer was present at the scene of the alleged offenses and disclosure was required: *People v. Perez*, 25 Ill.App.3d 371, 323 N.E.2d 399; *People v. Coles*, 20 Ill.App.3d 851, 314 N.E.2d 526; *People v. Castro*, 10 Ill.App.3d 1078, 295 N.E.2d 538.

No crucial elements of the State's case depended on Lucas; there was no marked conflict in the testimony that he could have resolved as occurred in *People v. Williams*, 40 Ill.2d 367, 240 N.E.2d 580, and while it is easy to make the assertion that the informer was spirited out of the State and made unavailable as a witness, such was never established as it was in *People v. Wilson*, 24 Ill.2d 425, 182 N.E.2d 203.

■■ We therefore hold that the unavailability of the informer did not

deprive the defendant of the opportunity to conclusively establish his innocence.

The defendant's third argument is that the trial court erred when it refused his instructions relating to whether possession is a necessary element to prove him guilty of delivery of a controlled substance. In this connection the defendant tendered the following instructions:

"Defendant's Instruction No. 10: Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession.

Defendant's Instruction No. 11: The court instructs the jury that in order for the defendant to deliver a controlled substance as charged in the indictment, you must be convinced by the evidence beyond a reasonable doubt that he knowingly had a controlled substance in his possession. The word 'possession' includes the exercise of dominion and control over the thing possessed."

Defendant argues in substance that in order to deliver a substance, a person must be in possession of it. Since illegal possession of narcotics is a lesser included offense to the charge of unlawful sale, *People v. Green*, 27 Ill.2d 39, 187 N.E.2d 708, it is urged that possession is also a lesser included offense to the charge of delivery of a controlled substance. Accordingly, it is urged that possession is a necessary element to prove the offense of delivery of a controlled substance and that the trial court erred in refusing to instruct the jury in accordance with the tendered instructions.

We note first that the term "deliver" is defined in the Illinois Controlled Substances Act as "the actual, constructive or attempted transfer of possession  *  *  *" (Ill. Rev. Stat., ch. 56½, par. 1102(i) ). Although this definition arguably supports the defendant's position, an instruction using these exact words would require further explanation of the term "constructive possession" in order to avoid confusion and misapplication by the jury. *People v. Csontos*, 275 Ill. 402, 114 N.E. 123; *cf. People v. Kissinger*, 26 Ill.App.3d 260, 325 N.E.2d 28.

In the case at bar, the People's instructions which were given to the jury define knowledge and the offense of delivery of a controlled substance in the language of the statute. (Ill. Rev. Stat., ch. 56½, par. 1401.) Additionally, the jury was instructed as to the People's burden of proof.

We must therefore determine whether an instruction defining possession must be given when the defendant is charged with knowingly delivering a controlled substance.

Instructions should be given in plain language, and the use of technical

terms should be avoided as far as possible. When the terms in question are of general use, and are not technical terms or words of art, they need not be defined, in the absence of anything in the charge to obscure their meaning. 14A Ill. L.&Pr. *Criminal Law* § 643 (1968).

Judged by these standards, we believe the failure to instruct as to the necessity of the element of possession or the meaning thereof did not constitute error. The term "deliver" is commonly used and understood by laymen. It was entirely proper for the trial court to instruct the jury by defining the crime charged in the language of the statute. *People v. Rudolph*, 12 Ill.App.3d 420, 299 N.E.2d 129; *People v. Eastland*, 11 Ill.App.3d 271, 296 N.E.2d 363.

The defendant next argues the evidence did not prove him guilty beyond a reasonable doubt. We cannot agree.

At the trial Agents Barrett and Krug testified for the People. The defendant testified that Dale Quimby left a package with him, telling him that someone would come in for it. Defendant stated that there was no discussion as to what was in the package. Neither Quimby nor Junior Lucas, the informer, testified at the trial.

Defendant urges that the testimony of Barrett, who was present at the time of the delivery, was not sufficient to prove him guilty beyond a reasonable doubt. Furthermore, he asserts that the State did not prove that the defendant knew what was in the package he was delivering.

The general rule is that the testimony of a single witness if positive and credible is sufficient to establish defendant's guilt if believed by the jury. (*People v. Schneekloth*, 129 Ill.App.2d 451, 263 N.E.2d 500.) This rule has been applied when the offense charged is the unlawful sale of narcotics and where the only testimony of the violation is offered by a police officer even though such testimony is contradicted by the accused. *People v. Guido*, 25 Ill.2d 204, 184 N.E.2d 858.

It is the function of the jury to assess the credibility of witnesses and to weigh conflicting evidence. (*People v. Ohley*, 15 Ill.App.3d 125, 303 N.E.2d 761.) We will not interfere with that function unless the verdict is clearly against the evidence.

Nor do we find any merit in defendant's contention that there is an absence of evidence from which the jury could reasonably infer that the defendant "knowingly" delivered a controlled substance. Defendant's argument fails to take into account the testimony presented by the People concerning defendant's knowledge of Agent Barrett's purpose in coming to the tavern. Barrett testified that after he and Ghighi sat at the bar, defendant approached them and Ghighi said Barrett wanted to purchase LSD. This factor along with the ensuing discussion between the defendant and Barrett about LSD was sufficient to permit the jury to find that

defendant knowingly delivered a controlled substance. We believe that rather than an absence of evidence to prove defendant guilty beyond a reasonable doubt, there is merely a conflict in the evidence. (*People v. Hesse,* 18 Ill.App.3d 669, 310 N.E.2d 199.) Whether there is knowledge is a question of fact to be determined by the jury and the findings of the jury will not be disturbed on review unless so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Galloway,* 28 Ill.2d 355, 192 N.E.2d 370.

■■■ The defendant next contends that arguments of the prosecuting attorney were prejudicial to his case and inflamed the jury.

In his opening statement, the prosecutor represented that "five days before the transaction we are concerned about at this trial," Agent Barrett had purchased LSD from Greg Ghighi. Defense counsel's motion for a mistrial was denied.

During direct examination of Agent Barrett the following colloquy occurred:

"Mr. Yackley: What was the subject of your conversation with Mr. Ghighi?

The Witness: I conversed with him about purchasing L.S.D. I asked him if he had L.S.D. available. He stated that he had one hundred units he was selling for a dollar per tablet, or per unit.

Q. Why would you approach a young man on the street and ask him that kind of a question?

Mr. Olivero: I object as to why.

The Court: Sustained.

Mr. Yackley: In your previous acquaintanceship with Greg Ghighi, did you ever purchase any drugs from him?

The Witness: Yes, sir."

Defense counsel's motion to strike was denied by the trial court on the ground that the answer was background. Barrett then stated that he had previously purchased drugs from Greg Ghighi.

Defendant relies upon *People v. McMillan,* 130 Ill.App.2d 633, 264 N.E.2d 554. In *McMillan,* the defendant and one Meid were both indicted for unlawful sale of narcotic drugs, but the two were tried separately. At McMillan's trial, an undercover agent, to whom the drugs were sold, testified as to certain admissions made by Meid in McMillan's presence. The admissions consisted of statements that Meid had committed earlier crimes. The court held that since these statements were not admissions against McMillan, their presence in the trial prejudiced the defendant because of the possibility the jury would connect him to the earlier crimes related by Meid.

In his closing argument, the prosecutor in *McMillan* argued that a certain named informer introduced the agent "* * * to people he knew were involved in the sale of narcotic drugs." (130 Ill.App.2d 633, 636.) The informer did not testify and there was no evidence that he had any prior acquaintance with McMillan. In his opening statement the prosecutor represented that McMillan and Meid were "trafficking in narcotic drugs, particularly marijuana." (130 Ill.App.2d 633, 636.) No evidence was presented that McMillan himself was ever engaged in any other transaction involving narcotics. The court held that the improper evidence and the prosecutor's arguments prejudiced the defendant's right to a fair trial.

We believe that, as in *McMillan*, the improper admission of evidence and the prosecutor's argument concerning Greg Ghighi's previous sales of narcotics to Agent Barrett prejudiced the defendant. The total effect was to deprive the defendant of his constitutional right to a fair trial.

No evidence was presented that defendant himself was ever involved in any of the previous sales from Ghighi to Barrett. Nevertheless, it was entirely possible that the jury would connect the defendant to these transactions.

Although we cannot determine the effect on the jury of the improper evidence and prejudicial arguments, we cannot speculate with the rights of a defendant and say that the jury only acted upon competent evidence. *People v. Rogers*, 348 Ill. 322, 180 N.E. 856.

We also consider various remarks made by the prosecutor in his closing argument to be highly improper. He stated that defense counsel's closing argument was "fraudulent," and referred to defense counsel as "the biggest fraud of all." Such an argument cannot possibly aid the jury in weighing or evaluating the evidence, but tends only to arouse its antagonism against defendant and his attorney. (*People v. Polenik*, 407 Ill. 337, 95 N.E.2d 414.) The ends of justice are not furthered by such conduct.

Accordingly, the judgment of the circuit court of La Salle County is reversed and the cause remanded for a new trial. Under these circumstances we need not discuss defendant's final contention concerning the validity of Supreme Court Rule 413(d).

Reversed and remanded.

ALLOY and STENGEL, JJ., concur.