*In re* J. T., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* J. T., Defendant-Appellant.)

Third District   No. 77-295

Opinion filed November 21, 1978.

STOUDER, J., dissenting.

Frank W. Ralph and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong, of State's Attorneys Appellate Service Commission, of Ottawa, for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant appeals from an order adjudicating him a delinquent in a juvenile proceeding based upon a charge of unlawful delivery of a controlled substance.

At the adjudicatory hearing Pekin Police Officer Craig Salmon testified that, while assigned to the Multi County Narcotics Enforcement Group, he was in Canton where he was introduced to the 16-year-old defendant by a police informant identified as CS 27. During the conversation which followed, CS 27 asked defendant where they could reach Boogie, who was defendant's brother, because they wanted to buy some "speed." Defendant said he could call around to locate his brother. After defendant made some phone calls, Salmon, CS 27 and defendant got into Salmon's car, and at defendant's direction, they drove to a trailer court. Defendant got out of the car and went into the trailer, returning after a few minutes to say he had "200 hits of speed." Salmon explained that he only wanted to

purchase 100 and asked the cost. Defendant did not know and went back into the trailer. Then a shorter man came out and motioned for CS 27 to come over which he did. About five minutes later CS 27 came back to the car and handed Salmon one white double-scored pill. Salmon gave CS 27 a $20 bill, and CS 27 left the car and started toward the trailer as defendant came back, got into Salmon's car, and handed Salmon a small plastic bag of white double-scored pills. According to Salmon, "I picked them up, put them in my shirt pocket. CS 27 came back to the car, and in my presence handed [defendant] a $20 bill." Defendant then went back into the trailer and a short time later returned to the car. During the ride back downtown, defendant mentioned that the speed was "good white," that he had taken three and got high, that more were available, and that his brother wouldn't rip anybody off. He also said that four of the biggest drug dealers in town were in the trailer, and if they knew there was a "narc" around, they would kill him.

During the cross-examination of Officer Salmon, defendant asked the identity of CS 27. The court sustained the State's objection and then denied defendant's motion for a mistrial in which he claimed he was being denied access to a material witness. When Salmon was later called as the only defense witness, he stated that he knew the identity of CS 27 but he did not know where to reach him. Defendant then asked whether Salmon knew how to contact CS 27, but the trial court sustained the State's objection to further questioning.

At the conclusion of the hearing, defendant was adjudicated a delinquent minor and was committed to the Department of Corrections for a diagnostic evaluation. He was subsequently given a term of probation.

The sole issue on appeal is whether the State was required to disclose the identity of the informer. The United States Supreme Court in *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, discussed the policy considerations behind what is sometimes referred to as "the informer's privilege," stating:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623, 628-29.

Defendant relies upon *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685, where the Illinois Supreme Court stated:

"[H]ere the government's informer was the sole participant, other than the accused and a purchasing police officer in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of the government witnesses. In such instances the defendant must, at minimum, be allowed to interview the informer, and if he desires, call him as his own witness, and the informer should not be made to disclose his true name and address if it can truly be shown that his life or safety is in jeopardy." (57 Ill. 2d 232, 238, 311 N.E.2d 685, 689.)

In *Lewis*, the narcotics purchase was arranged by the informer who was present during the transaction, and the defendants' pretrial motion for disclosure of the informer's name and address had been denied. At trial the defendants testified that neither the purchasing agent nor the informer was present at the time charged, and they denied any sale of narcotics. Thus the informer was the only witness who could either corroborate or deny the contradictory testimony relating to the essential elements of the illegal sale. See also *People v. Gibson* (4th Dist. 1977), 54 Ill. App. 3d 898, 370 N.E.2d 262; *People v. Housby* (3d Dist. 1975), 33 Ill. App. 3d 762, 338 N.E.2d 461.

Unlike *Lewis* and the other cases cited, the unidentified informer in the case at bar did not arrange the buy and was not present at the time defendant delivered the 100 pills of speed to Salmon. Defendant claims the State has drawn an unwarranted conclusion from the evidence that CS 27 was not present at the time of delivery of the controlled substance. The record in this case is unrebutted and clearly indicates CS 27's absence when the delivery was made. The informer's participation was peripheral at most. He introduced Officer Salmon to defendant and asked about contacting his brother Boogie. After defendant located his brother and directed Salmon to Boogie's trailer, the negotiations and delivery were conducted between Salmon and defendant. The informer did show Salmon a sample pill in defendant's absence, and he handed defendant a $20 bill after the delivery was completed. However, payment of money was not an element of the crime and was not of itself an illegal act.

We believe this case is controlled by the same principles as were applied in *People v. Monroe* (3d Dist. 1975), 32 Ill. App. 3d 482, 335 N.E.2d 783, *aff'd* (1977), 66 Ill. 2d 317, 362 N.E.2d 295, where the informer, who was identified but not produced by the State, had accompanied the police officers to the site of the transaction and had been present when the officers were trying to arrange a buy, but he did not witness the actual purchase. This court found that the informer was not a crucial witness or source of information for the defense since he was not present at the transaction, and that the unavailability of the informer did not deprive defendant of the opportunity to establish his innocence.

In the course of weighing the circumstances of the case before us, we think it noteworthy that defendant has not challenged Officer Salmon's veracity, either by cross-examination or by direct evidence. (*Cf. Franks v. Delaware* (1978), ___ U.S. ___, ___ L. Ed. 2d ___, 98 S. Ct. 2674.) Also, at no time did defendant request the State to produce CS 27 for purposes of an interview. According to *Lewis*, a defendant has a right to interview an informer without necessarily knowing his true identity. Finally, the possible significance of the informer's testimony is substantially reduced by the fact that he was not present when the delivery was made.

We conclude that the trial court did not err in refusing to require disclosure of the informer's identity. The judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

BARRY, P. J., concurs.

MR. JUSTICE STOUDER, dissenting:

I respectfully dissent from the opinion of my colleagues. I believe the defendant was entitled either to disclosure of the identity of the informant, or, if the informant's life was truly in jeopardy, to interview the informant without knowing his true identity and address. I agree that *Roviaro* and its progeny govern our decision, but the majority fails to correctly interpret and apply the teachings of those decisions and thereby reaches an erroneous conclusion.

As I interpret the majority opinion, the basic premise from which the majority proceeds to hold nondisclosure proper is the failure of the informant to be in the car at the precise moment that the drugs exchanged hands. From this premise, the majority reasons that since the informant was not present at the precise moment of delivery and the crime charged is delivery, the informant possesses little if any relevant information and therefore nondisclosure was proper. I believe such a position is neither warranted by the facts nor by the applicable principles set forth in *Roviaro* and subsequent cases. Whether or not disclosure is justified must be determined by examining the facts in their entirety. It is circumstances surrounding the offense, be they before, during, or after the offense, which must be balanced against the public interest in protecting the flow of information. I believe the present circumstances surrounding the offense indicate the informant might possess information pertinent to possible defenses, matters of credibility, or impeachment and hence, some form of disclosure was required.

While the majority have relied on *People v. Monroe*, 32 Ill. App. 3d 482, 355 N.E.2d 783, scrutiny of that opinion reveals that it supports my position. In *Monroe*, the following factors supported nondisclosure: the informant had not assisted in staging the transaction, he neither heard what was said at the time of the transaction nor observed what each party did in completing it, and was neither a participant nor a witness to the essential elements of delivery. Unlike *Monroe*, here the informant assisted in staging the transaction by introducing the defendant to Salmon and asking if the defendant knew where they could contact defendant's brother, because as the informant explained, they wanted to buy "speed." Furthermore, after arriving at the trailer, the informant facilitated the exchange of money and drugs by acting as a go-between. During the transaction, the informant had a discussion with the person who appeared to be the supplier of the drugs, out of the presence of Salmon. Shortly after this, the informant returned to the car and gave Salmon a double scored pill. Without the informant's assistance, it is doubtful that the transaction would have taken place. The informant's discussion with the apparent source of the drugs certainly warranted investigation into whether the informant, at this time or some prior time, was actually the source of the drugs and thereby raising a possible defense of entrapment. While Salmon's testimony states the informant was not in the car when the defendant handed the pills to Salmon, such a fact alone is not conclusive of the disclosure issue. (See *United States v. Silva* (5th Cir. 1978), 580 F.2d 144, holding disclosure required where an informant, who had been riding in a car with a government agent and defendant, got out and stood near the front of the car while the agent purchased drugs from the defendant.) This is so especially since the informant had provided a sample and was a conduit by which the money was given from Salmon to defendant. Having played such a prominent role in the entire episode, it cannot be reasonably maintained that the informant was not a participant. According to the narcotic agent's own testimony, the informant was able to observe various aspects of the transaction and was present when incriminating statements were alleged to have been made by defendant. Certainly, the informant in this case was much more involved than was the informant in *Monroe* and I believe such involvement required disclosure.

In *Gilmore v. United States* (5th Cir. 1958), 256 F.2d 565, the defendant was charged with the unlawful sale of narcotics. The prosecution's case rested entirely on the testimony of a governmental agent who made the alleged purchase in a tavern. Cross-examination of this witness and two investigative reports prepared by him revealed that an informer had set the stage for the transaction by telling the defendant that the agent was a seaman interested in obtaining some narcotics. The informer was in the

tavern when the agent arrived. When the defendant and the agent went toward the rear of the tavern, the informer joined them. The agent acknowledged that the informer was present during part of the conversation and was in a position to have heard what was said. The drugs were not transferred directly between the agent and the defendant, but were left in the agent's car and the agent was then informed where the drugs could be found. In holding that disclosure was called for, the court stated:

> "Here Anonymous [informer] had done more than merely inform or supply information. He was an active participant in setting the stage, in creating the atmosphere of confidence beforehand and in continuing it by his close presence during the moments of critical conversation.
>
> &ast; &ast; &ast;
>
> As Anonymous was a principal actor before and during this performance, who he was and what he knew was certainly material and relevant. In this testimony there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure." (256 F.2d 565, 567.)

The circumstances in the present situation are substantially similar to those in *Gilmore* and the same result should inure.