THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER GALE SMITH, Defendant-Appellant.

Second District   No. 78-233

Opinion filed October 31, 1979.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant Roger Gale Smith was found guilty by a Winnebago County jury of the offense of armed robbery, in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). He was sentenced to serve a term of six to 18 years imprisonment. On appeal, he argues that: (1) he was denied a fair trial when the State was allowed to prove that the gun and car used in the robbery had previously been stolen; (2) the trial court erred in admitting certain physical evidence where the State failed to lay a sufficient foundation for its admission; (3) the court erred in permitting the prosecutor to impeach a defense witness by prior inconsistent statements where the prosecution failed to lay a sufficient foundation on cross-examination; and (4) the trial court erred in giving an instruction defining "voluntary possession." We affirm.

The pertinent facts are as follows. At about 11:15 p.m. on the evening of February 3, 1977, Mark Benner (not a party to this appeal) entered the Park-It Market located at 621 Kishwaukee in Rockford, Illinois. He approached the counter, produced a gun, then demanded money from the store's owner, John Rudolph. He also demanded the wallets of several customers who were present in the store at the time. In the meantime, Rudolph's sister-in-law had pressed an alarm button which was connected to the Rockford police department. Rudolph attempted to stall the gunman by sorting food stamps from the currency, but Benner ordered him to place the stamps and cash, together with the customers' wallets and purses, in a bag. Rudolph complied. Benner left through the front door and entered a car parked outside. Rudolph noticed that the car's engine was running, that Benner entered on the passenger side, and that the car drove off as soon as Benner was inside. Although he was able to observe another man seated on the driver's side of the front seat, he was unable to distinguish his features.

Alan Kjenner, a customer in the store at the time of the holdup, furnished a description of the getaway vehicle and the license plate numbers to police immediately following the robbery. He described the car as a gold four-door Oldsmobile[1] about nine years old. He thought the license plate was either AV4612 or AV4602, but he was not sure which.

At 11:25 p.m., Rockford police officers Paul Triolo and Stephen Pugh, who were on patrol in their marked squad car, received instructions from the police dispatcher to assist other units answering a holdup alarm at the Park-It Market. While they were en route to the store, they received another radio message that confirmed the market holdup. At that time, the dispatcher supplied them with a description of the vehicle and the license plate numbers.

---

[1] Actually, the car was of Chevrolet make.

At 11:30 p.m., the officers spotted a car matching the general description of the vehicle used in the robbery parked behind the Ten-Stopet tavern at 1312 7th Street in Rockford, approximately 10 blocks away from the scene. The car bore Illinois license plate numbers AV4612. Two men were inside the car at the time. The officers shined the squad car's spotlight on the vehicle; the driver turned around, then threw something out of the door window. The passenger, Mark Benner, exited the car and ran.

The driver, defendant Roger Gale Smith, was taken into custody and searched. At the time he was wearing a green army-type jacket. Inside the jacket, police found: currency and coins totaling $66.57; two wallets belonging to Park-It Market customers; and 48 food stamps, two of which were stamped on the reverse side, "Pay to the order of Park-It Market." Police also found a small cap pistol in a jacket pocket. A search conducted after his arrest also revealed that defendant was carrying a driver's license issued to his brother.

The car itself was then searched. In the front passenger seat of the vehicle, police found a .22-calibre pistol, with three live bullets and three spent bullets in the cylinder. A total of $87.47 in cash was found lying underneath the seat.

During the State's case-in-chief, two witnesses were permitted to testify about two guns and a car which were stolen in two separate burglaries which occurred a short time prior to the armed robbery. James Rowton, the owner of Jim and Don's Used Car Lot in Rockford, testified that he closed his business at 9 p.m. on February 3, 1977. After receiving a phone call about midnight, he returned to his business and discovered that the office door had been knocked down and a 1969 Chevrolet had been stolen. Similarly, Robert Latham, the son of the owner of B&J's Auto Sales, testified that upon arriving at work about 8 a.m. on February 4, 1977, he found the office door broken down and the office in disarray. An inventory of the office revealed that two guns, kept inside a desk drawer at the office, were missing. Both the car and the guns were later found in the possession of defendant Smith.

Defendant presented an alibi defense at trial. He testified that, at the time of the robbery, he was inside the Ten-Stopet tavern. At about 11:30 p.m., his cousin, Mark Benner, walked into the bar and asked defendant to hold some things for him. Defendant left the tavern and got into the front seat of a car which was parked in back. Benner then gave him some cash, food stamps, the wallets, and a pistol, which he placed inside his field jacket. Immediately thereafter, the police arrived and arrested him. Defendant's alibi was corroborated at trial by defense witness Helen Hoff, the sister of defendant's girlfriend. However, she was impeached by

prior statements in which she had expressed doubt whether she had seen him in the tavern the night of the offense.

Defendant's first argument is that he was denied a fair trial when the prosecution was allowed to prove that the car and guns used in the armed robbery were taken in burglaries and were not in possession of the owners at the time of the offense. In denying defendant's motion *in limine* prior to trial, the court ruled the evidence was not admissible under any exception to the general rule prohibiting the admission into evidence of crimes other than those charged in the indictment;[2] however, the court further ruled it was admissible for the purposes of "anticipatory rebuttal." Defendant contends on this appeal that the court below was correct in ruling that the evidence was not admissible under any exception to the "other crimes" evidence rule, but erred in admitting it as anticipatory rebuttal proof. The State contends that it was admissible for the purpose of showing that the owners of the property were not involved in the robbery.

We are of the opinion that the trial court ruled correctly in denying the motion *in limine*. Although not relied upon by the trial court or cited to us by the parties, we believe that *People v. Walls* (1965), 33 Ill. 2d 394, 211 N.E.2d 699, and *People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236, are controlling under the circumstances present in the case at bar.

In *Walls*, the accused was charged and convicted of rape. In the course of trial, the prosecution was permitted to prove that a car used to transport the rape victim subsequent to the crime was stolen. The supreme court, in affirming the conviction, held that the trial court did not err in admitting this evidence. First, the court observed that such evidence "* * * could be considered part of the 'continuing narrative which concern[s] the circumstances attending the entire transaction'." (*Walls*, 33 Ill. 2d 394, 397, 211 N.E.2d 699, 701.) Secondly, the court noted that "[o]wnership of the car and who it was driven by on the night of the alleged rape were * * * relevant issues in the case." (*Walls*, 33 Ill. 2d 394, 398, 211 N.E.2d 699, 701.) Thus, proof that the car was not in the possession or control of its rightful owner was held to be admissible by the court as probative of the identity of the offenders.

A similar situation was presented to the court in the *Peto* case, decided two years after *Walls*. In *Peto*, the defendants were charged with burglary. During the trial, the prosecution proved that a car used by defendants in the commission of the crime had been stolen approximately two months before. On appeal from their convictions, defendants argued that it was error to admit this evidence, as it implicated them in crimes for which they were not on trial. The supreme court upheld the trial court's

---

[2] See, *e.g.*, *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288; *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.

ruling and affirmed the convictions. The court first noted that the possession of the car and the items found therein on the night of the offense were relevant factual issues in the case; thus, it was proper for the State "* * * to introduce testimony that the car was not in the possession of the owner nor were the items found in the vehicle owned by or in the possession of the [car's] owner at the time of the burglary." *Peto*, 38 Ill. 2d 45, 50, 230 N.E.2d 236, 239.

■■ Our examination of the record persuades us that two main factual issues were presented to the jury for its consideration in the instant case: (1) whether the getaway car was driven by someone other than Mark Benner at the time of the offense; and if so, (2) whether defendant was that man. Thus, the possession and ownership of the auto were relevant fact questions here, and we hold that evidence that the car was stolen was admissible pursuant to *Peto* and *Walls*. Any suggestion that the defendant may have committed offenses not set forth in the information was simply a "by-product of the offering of relevant evidence by the State * * *" (*Peto*, 38 Ill. 2d 45, 51, 230 N.E.2d 236, 239), and does not constitute error.

■■■ Secondly, defendant argues that "evidence of a burglary in which two guns were allegedly stolen was improperly admitted where the State failed to establish that the guns were present and taken at the time of the burglary." However, it is apparent to us that defendant has misapprehended the prosecution's theory of the admissibility of the evidence. The guns were not offered into evidence as proof of other offenses or to show that a burglary had taken place at the car lot; rather, the testimony was only offered to show that the owner of the guns was not in possession of them on the night of the robbery. The State did not seek to introduce evidence of the burglary itself. Since the son of the owner of the car lot identified the guns at trial as the ones kept in the office, the foundation for their admission into evidence was sufficient. *People v. Sansone* (1976), 42 Ill. App. 3d 512, 514, 356 N.E.2d 101, 103.

■■ Defendant also contends that the trial court erred in admitting evidence of what he characterizes as yet other offenses. The evidence to which he refers is a partially full bottle of liquor and a knife found in the car at the time of his arrest, and the driver's license issued to his brother, which was found in his wallet. Defendant admits, however, that no objections were lodged to the introduction of these items into evidence at trial. Consequently, we believe that any objection now raised by defendant must be considered as waived.

Thirdly, defendant argues that it was reversible error for the State to introduce rebuttal testimony intended to impeach defense witness Helen Hoff with a prior inconsistent statement where the prosecution failed to lay an adequate foundation on cross-examination. We note once again

that no objection was made to the introduction of the impeaching statement at trial and we therefore consider the issue as waived. *People v. Roberts* (1976), 36 Ill. App. 3d 811, 820, 345 N.E.2d 132, 139.

Lastly, defendant argues that the trial court erred in submitting an instruction to - the jury which defined "voluntary possession." The instruction, IPI Criminal No. 4.15, reads as follows:

"Possession is a voluntary act if the offender knowingly procured or received the things possessed, or was aware of his control for a sufficient time to have been able to terminate his possession."

This was apparently given in conjunction with People's instruction No. 16, IPI Criminal No. 13.21, which was also given to the jury. This instruction states:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by armed robbery."

■■ Defendant contends that it was unnecessary for the court to define "possession" because armed robbery is not a possessory offense, and because he admitted possession of the items stolen in the robbery. We agree. As the court stated in *People v. Monroe* (1975), 32 Ill. App. 3d 482, 487-88, 335 N.E.2d 783, 788, *aff'd* (1977), 66 Ill. 2d 317, 362 N.E.2d 295:

"Instructions should be given in plain language, and the use of technical terms should be avoided as far as possible. Where the terms in question are of general use, and are not technical terms or words of art, they need not be defined, in the absence of anything in the charge to obscure their meaning."

■■ Since armed robbery is not a possessory offense, we are of the opinion that it was unnecessary for the court to include a technical definition of "voluntary possession" in its instructions to the jury. (*Cf. People v. Monroe* (1975), 32 Ill. App. 3d 482, 335 N.E.2d 783, *aff'd* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) Nor is the instruction necessary in connection with the "recently stolen property" instruction. In the context of that instruction, the term "possession" is not a technical word or a word of art, and its popularly understood meaning will suffice. We also note that defendant admitted possession of the stolen articles at the time of his arrest; thus, his possession of the stolen items was not in issue in this case. Rather, it was the reasonableness of defendant's explanation for such possession that was in dispute. Consequently, we believe the court erred in giving an instruction defining "voluntary possession" to the jury.

■■ However, in view of the strong circumstantial evidence incriminating defendant and considering the weakness of his alibi defense, we believe that this minor error does not require reversal of defendant's conviction. Moreover, since defendant admitted possession of the stolen cash,

wallets, and coupons, it is likely that the jury simply disregarded the superfluous instruction on "voluntary possession" and addressed itself to the contested factual issues in the case. Defendant's argument that the jury would have been unduly confused by the erroneous instruction is speculative, and assumes, at least in part, that the jury would disregard other court instructions which were correctly stated and properly given. We therefore hold that this error was harmless and reversal is not warranted under the circumstances presented here.

Accordingly, the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

GUILD, P. J., and RECHENMACHER, J., concur.